UNITED STATES of America,
Plaintiff-Appellee,

v.

Roger L. WHITESEL,
Defendant-Appellant.

No. 75–1648.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 4, 1976.

Decided Oct. 22, 1976.

Rehearing Denied Feb. 7, 1977.

Roger L. Whitesel, pro se.

William W. Milligan, U.S. Atty., Ralph Winkler, David E. Melcher, Cincinnati, Ohio, for plaintiff-appellee.

Before EDWARDS, McCREE and LIVELY, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant Whitesel appeared before this court pro se to argue his appeal from conviction for failure to file income tax returns for the years 1972 and 1973, in violation of 26 U.S.C. § 7203 (1970), and for failure to supply information to the Internal Revenue Service for the same years, in violation of 26 U.S.C. § 7203 (1970), and for supplying false and fraudulent information about withholding exemptions to his employer, in violation of 26 U.S.C. § 7205 (1970). The case was tried to a jury before a District Judge in the United States District Court for the Southern District of Ohio and defendant was found guilty on all counts.

Appellant was sentenced to a total of two years imprisonment and a total fine of $1,500. The sentences by count were as follows:

Count 5: One year and $500 fine.

Count 1: Six months and $500 fine. Both consecutive to Count 5.

Count 2: Six months—consecutive to Count 5 and concurrent with Count 1—and a fine of $500 remitted.

Count 3: Six months—consecutive to Counts 1 and 5—and a fine of $500 in addition to Counts 1 and 5.

Count 4: Six months—concurrent with Count 3 and consecutive to Counts 1 and 5—and a fine of $500 remitted.

The facts proved before the District Court established that in 1972 Whitesel filed an IRS 1040 Individual Tax Return containing on page 1 of the return: "Under protest. I plead the Fourth and Fifth Amendments and the United States Constitution." In 1973 no financial information was provided, but on the form defendant printed: "Object, see attachments," and submitted 170 pages of protest material concerning the income tax system. Defendant's wife filed separate returns.

On August 4, 1972, defendant filed with his employer, Valley Sheet Metal Works, Inc., an exemption from withholding Form W–4(e) in which he stated that he had incurred no liability for a federal income tax for 1971 and anticipated incurring no income tax liability for 1972. Thereupon the employer stopped withholding sums from defendant's pay check but also consulted the Internal Revenue Service about the matter which led to this prosecution.

The government also introduced W–2 forms showing defendant's gross wages for 1971 to have been $16,634.56; for 1972, $19,403.42; and for 1973, $19,868.58. An IRS accountant testified that assuming these gross wages, defendant should have paid a tax of around $4,500 for 1972 and something over $5,000 for 1973, these figures apparently being based on standard deductions. Actually, in 1971 the government record shows that $3,357.40 was withheld for that year, and after filing a return, the defendant received a refund of $41.19.

The issues in this taxpayer protest suit represent an attack on the present tax system of the United States, its monetary system, and its system of justice.

First, and of principal concern to this court, appellant contends that he has been deprived of his Constitutional right to chosen counsel by the District Judge's refusal to allow him to be represented at his trial by an accountant, not a lawyer or a member of the bar, named George W. Thiel. The District Judge did, however, inform

appellant that if he didn't have the funds, counsel would be appointed for him and that under the recent decision of the United States Supreme Court in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), he had the right to represent himself and if he chose to do so, he could have Mr. Thiel at the counsel table with him advising him, but Mr. Thiel would not be allowed to participate in the trial. It is appellant's contention, however, that the Sixth Amendment right to "counsel" did not in 1789, and does not now, pertain to members of the bar, but should be construed as allowing for the advice and participation of a friend of the accused who is not a lawyer. This argument has decisively been rejected by three of the Courts of Appeals which have considered the issue.

The Fifth Circuit dealt with this issue in *United States v. Cooper,* 493 F.2d 473 (5th Cir.), *cert. denied,* 419 U.S. 859, 95 S.Ct. 108, 42 L.Ed.2d 93 (1974), where the court stated:

> There is no colorable merit in the proposition that a criminal defendant (especially one who has twice rejected the services of qualified and competent court-appointed counsel) is constitutionally vested with the right of assistance or representation by a lay person.

*United States v. Cooper, supra* at 474.

The same result was reached by the D. C. Circuit in even stronger language in *Harrison v. United States,* 128 U.S.App.D.C. 245, 387 F.2d 203 (1967), *rev'd on other grounds,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1967):

> The Sixth Amendment pledges that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." This adjuration necessitates "the guiding hand of counsel at every step in the proceedings against him," including "the giving of effective aid in the preparation and trial of the case." It is clear that these demands are not satisfied when the accused is "represented" by a layman masquerading as a qualified attorney; it is unthinkable that so precious

a right, or so grave a responsibility, can be entrusted to one who has not been admitted to the practice of the law, no matter how intelligent or well educated he may be. This is particularly so where, as here, the accused is on trial for an offense upon conviction of which his very life could become forfeit.

*Harrison v. United States, supra* at 212.

Similar results were reached in *United States v. Jordan,* 508 F.2d 750 (7th Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 62 (1975), and *McKinzie v. Ellis,* 287 F.2d 549 (5th Cir. 1961). *See also Turner v. American Bar Ass'n,* 407 F.Supp. 451, 477–78 (W.D.Wis.1975).

Nonetheless, the question posed by this appeal remains open for our consideration, since it has never been passed upon either by this court or by the United States Supreme Court. In fact, as appellant points out, in the Supreme Court's most recent construction of the Sixth Amendment, wherein it upheld a criminal defendant's right to self-representation, it employed language which suggests that there may well be a distinction between the term "counsel" as used in the Sixth Amendment and the term "attorney-at-law."

The colonists brought with them an appreciation of the virtues of self-reliance and a traditional distrust of lawyers. When the Colonies were first settled, "the lawyer was synonymous with the cringing Attorneys-General and Solicitors-General of the Crown and the arbitrary Justices of the King's Court, all bent on the conviction of those who opposed the King's prerogatives, and twisting the law to secure convictions." This prejudice gained strength in the Colonies where "distrust of lawyers became an institution." Several Colonies prohibited pleading for hire in the 17th century. The prejudice persisted into the 18th century as "the lower classes came to identify lawyers with the upper class." The years of Revolution and Confederation saw an upsurge of antilawyer sentiment, a "sudden revival, after the War of the Revolution of the old dislike and distrust

of lawyers as a class." In the heat of these sentiments the Constitution was forged. *Faretta v. California,* 422 U.S. 806, 826–27, 95 S.Ct. 2525, 2537, 45 L.Ed.2d 562 (1975). (Footnotes omitted.)

We do not read these words (as appellant would have us do) as determining that any defendant can choose any person he wishes, regardless of qualification, to be his counsel in the trial of a criminal case. But they do suggest our careful examination of the issue.

■ The Sixth Amendment provides in part that in all criminal prosecutions "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Critical to any interpretation of this language is Section 35 of the Judiciary Act of 1789 (1 Stat. 73) which was adopted by Congress almost contemporaneously with its proposal of the Sixth Amendment.[1]

Sec. 35. *And be it further enacted,* That in all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance of such counsel or attorneys at law as by the rules of the said courts respectively shall be permitted to manage and conduct causes therein.

Judiciary Act of 1789, Ch. 20, § 35, 1 Stat. 92 (Now codified as 28 U.S.C. § 1654 (1970)).

This statute has recently been cited and relied on by the United States Supreme Court in upholding the Sixth Amendment right of an accused to elect to defend himself. *Faretta v. California, supra.* No suggestion of conflict between the meaning of the Sixth Amendment and Section 35 is advanced in the briefing of this appeal, nor has our research developed any. Assuming, as we do, that the Sixth Amendment was adopted to make constitutionally secure in criminal cases rights already existing in the recently adopted statute, two applicable principles emerge from construction of the "assistance of counsel" guaranteed by the Sixth Amendment. First, since in the stat-

ute the terms "counsel or attorneys at law" are employed alternatively, it seems probable that the proposers of the Sixth Amendment did not mean to limit representation exclusively to "attorneys at law." Second, the statute clearly provides for the rules of the courts of the United States to determine who shall "be permitted to manage and conduct causes therein." By this language Congress recognized the constitutional power given the federal judiciary by the then recently adopted Constitution, Article III.

■ Interestingly enough, the rules of the United States District Court which tried this case provide as follows:

2.4.1 Roll of Attorneys

The bar of this court shall consist of those attorneys heretofore and those hereafter admitted to practice in this court.

2.4.2 Eligibility

Any member in good standing of the bar of the Supreme Court of Ohio who resides in or maintains an office for the practice of law in this district, is eligible for admission to the bar of this court.

2.4.3 Application for Admission

All candidates for admission to the bar of this court shall file with the clerk, at least twenty (20) days prior to the examination, an application on the form provided by the Clerk. Said application shall contain a certificate of two (2) members of the bar of this court, vouching for the good moral character and professional reputation of the applicant. Each candidate shall present himself for examination at the next examination after the filing of his application. If he fails to do so, it will be necessary for him to file a new application.

2.4.4 Examination for Admission

Unless otherwise ordered by a judge of this court, no applicant shall be admit-

---

1. President Washington signed the Judiciary Act of 1789 one day before Congress proposed the Bill of Rights to the states.

ted except upon successful completion of a written examination.

Under the direction of the chief judge, or his designee, the bar committees at Cincinnati, Columbus, and Dayton shall each prepare a written examination which they shall administer in each of the above named cities on the first Tuesday in June and December, or at such other times as may be ordered.

3.0.1 *Designation and Responsibility*

Unless otherwise ordered, in all actions filed in or removed to this court, all parties not appearing in *propria persona* shall be represented of record by a trial attorney who is a member of the bar of this court and who maintains an office for the private practice of law within this district. When two or more parties join in a single pleading only one trial attorney shall be designated. Thereafter, until such designation is changed by order of the court, upon motion, said trial attorney shall be responsible for the action and shall attend all hearings and conferences and the trial.

Rules of the United States District Court, Southern District of Ohio, 2.4.1, 2.4.2, 2.4.-3, 2.4.4, 3.0.1 (1975).

These rules provide a scheme for the qualification of trial counsel by examination and admission to the bar of the United States District Court for the Southern District of Ohio. But the term "Unless otherwise ordered" employed in 3.0.1 appears to us to retain in the hands of the District Judge discretion to deal appropriately with any extraordinary case.[2] We do not need in this present appeal to spell out what such a case might be. But for a District Judge to exercise his discretion to allow a person to try a case who was not a member of the bar of

the court and who had not qualified by taking the required examination, would at a minimum require a showing that such person was sufficiently learned in the law to be able adequately to represent his client in court. In our instant case the District Judge was asked to allow an accountant with no training in law to try the case. In denying that request he allowed appellant to exercise his right to try the case himself, with the accountant seated at the counsel table to advise with him throughout the trial. We find no abuse of appellant's Sixth Amendment rights.[3]

▪ Appellant also complains that the counts on which he was indicted are duplicitous and that they are fatally at variance. These two arguments, of course, are contradictory but it does seem obvious that Counts 1 and 3, and 2 and 4 charge much the same offense and would be established by the same proofs. Doubtless, for that reason the District Judge made the sentences wholly concurrent. Our review of this record convinces us that what was proved was failure to file and, as a consequence, that the convictions on Counts 2 and 4 pertaining to failure to supply information should be stricken on grounds of merger.

Repeatedly during the trial and at argument before our court appellant sought to contend that he was not due to pay any taxes because he had never received any "legal dollars." He argues that only money which is coined from either gold or silver or immediately backed by gold or silver constitute legal dollars and as a consequence, since he was not paid in any such during 1972 and 1973, he is exempt from taxation under the federal income tax laws. The Eighth Circuit has dealt with this conten-

---

**2.** *Cf. Turner v. American Bar Ass'n,* 407 F.Supp. 451, 477–78 (W.D.Wis.1975).

**3.** Appellant relies on *United States v. Stockheimer,* 385 F.Supp. 979 (W.D.Wis.1974), where a District Judge in the United States District Court for the Western District of Wisconsin held that he had the discretion to allow a person who was not a member of a bar association to advise a defendant in a criminal

case. The person involved had had legal training and the District Judge held he was qualified to sit with the defendant in court and advise him while he represented himself. This is the same arrangement allowed by the District Judge in our case. We do not consider this case authority for a result opposite to that which we have reached above.

tion in *United States v. Daly,* where the court said:

Defendant's fourth contention involves his seemingly incessant attack against the federal reserve and monetary system of the United States. His apparent thesis is that the only "Legal Tender Dollars" are those which contain a mixture of gold and silver and that only those dollars may be constitutionally taxed. This contention is clearly frivolous. *United States v. Daly,* 481 F.2d 28, 30 (8th Cir.), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973).

While we agree with this conclusion, we point out that both the Sixteenth Amendment and the Internal Revenue Code deal not with "legal tender" but with taxation of "income." This record is replete with proof that appellant did receive "income" during the years 1972 and 1973.

Appellant also argues that the trial judge, all members of this court, and all members of the United States Supreme Court are disqualified and should recuse themselves because all are named in the civil action in the United States District Court for the Western District of Pennsylvania in which he is a plaintiff. This action has now been dismissed by the United States District Court, although doubtless it is in the appellate process. More importantly, we do not think that the United States courts are so fragile as to be subject to being put out of existence by a civil suit which names all sitting judges. We believe that the District Judge and the members of this court who participated in this case are correct in refusing to recuse themselves.

While appellant has many other complaints about the Judge's exclusion of his evidence (designed, for example, to prove that plaintiff was the subject of selective and discriminatory prosecution) and the admission or exclusion of certain other evidence, we have reviewed these complaints and have been able to find no legal merit to them.

We have reviewed the Judge's instructions to the jury and find no error prejudicial to appellant's rights.

Finding no reversible error in the rulings of the court below, and no abuse of appellant's legal or constitutional rights, we affirm the judgment of conviction. On grounds previously stated, we vacate the sentence under Counts 2 and 4. Any suggestion for reduction of sentence must be addressed to the District Court under a Rule 35 motion at the completion of the appellate process in this case.