**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gordon C. PETERSON,**
**Defendant-Appellant.**

**No. 75–2093.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 1976.

Decided Jan. 20, 1977.

---

Gordon C. Peterson, in pro per.

David C. Mebane, U.S. Atty., Madison, Wis., for plaintiff-appellee.

Before BAUER and WOOD, Circuit Judges, and DILLIN, District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

On March 26, 1975, the defendant was charged in a one count indictment with practicing law for three days in December, 1974, in the United States District Court for the Western District of Wisconsin, on land under the exclusive jurisdiction of the United States, by appearing as agent and representative for Thomas F. Stockheimer in a case entitled *United States v. Stockheimer,* 385 F.Supp. 979 (W.D.Wis.1974), aff'd, 534 F.2d 331 (7th Cir. 1976), in violation of §§ 7 and 13, Title 18 U.S.C., and § 256.30(1) and (2) of the Wisconsin Statutes.[1]

After trial by jury the defendant was found guilty and sentenced to a 30-day term of imprisonment.

There is little factual dispute, but some background is helpful in understanding the issue in one criminal prosecution that grew out of another. In *United States v. Stockheimer, supra,* the defendant Stockheimer was charged with assaulting a federal officer. Stockheimer filed a motion for an order to "allow Gordon Peterson, a person not licensed by any Court or Governmental Agency, but only licensed by Petitioner by this Power of Attorney, to be and act as Counsel and spokesman for Petitioner before the Court at the pleasure and direction of Petitioner." Peterson consented to act in accordance with the motion. A few days later Stockheimer filed a similar motion seeking to have one Jerome Daly, another disbarred attorney, also assist in his defense. This latter motion was not pursued by Stockheimer and is not involved in this appeal. Both motions were opposed by the Government.

Judge Doyle set the Stockheimer-Peterson motion for hearing, following which the court entered an Opinion and Order.

---

* District Judge S. Hugh Dillin, of the United States District Court for the Southern District of Indiana, is sitting by designation.

1. The pertinent parts of the respective statutes are as follows:
    § 7. Special maritime and territorial jurisdictions of the United States defined
    * * * * * *
    (3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.
    * * * * * *
    § 13. Laws of states adopted for areas within federal jurisdiction.
    Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.
    § 256.30(1), Wisconsin Statutes (1973):

Every person, who without having first obtained a license to practice law as an attorney of a court of record of Wisconsin, as provided by law, shall practice law within the meaning of sub. (2) of this section, or hold himself out as licensed to practice law as an attorney within the meaning of sub. (3) of this section, shall be guilty of a misdemeanor, and upon conviction, shall be punished by a fine of not less than $50 nor more than $500 or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment, in addition to his liability to be punished as for a contempt.
    § 256.30(2), Wisconsin Statutes (1973):
    Every person who shall appear as agent, representative or attorney, for or on behalf of any other person, or any firm, co-partnership, association or corporation in any action or proceeding in or before any court of record, court commissioner, or judicial tribunal of the United States, or of any state, or who shall otherwise, in or out of court for compensation or pecuniary reward give professional legal advice not incidental to his usual or ordinary business, or render any legal service for any other person, or any firm, co-partnership, association or corporation, shall be deemed to be practicing law within the meaning of this section.

*Stockheimer, supra.* In general that opinion found that Stockheimer was not qualified to defend himself effectively without the assistance of counsel, but had effectively waived the right to be represented by a member of the bar at either his own or public expense. It was further found that Stockheimer trusted Peterson as they generally shared the same philosophy concerning constitutional rights and desired Peterson's trial assistance with full knowledge that Peterson had been disbarred in Minnesota in 1971. As to Peterson, the court found that he had been a member of the Minnesota Bar from 1942 to 1961 when his license was revoked for alleged dishonesty in his professional dealings. Since that time Peterson had unsuccessfully sought reinstatement. The court then concluded as to Peterson that even apart from his lack of license he was not presently professionally qualified to serve effectively as an attorney for a defendant in a criminal case.

After a discussion of the Fifth and Sixth Amendments the court denied Stockheimer's motion, but concluded that in the absence of any constitutional or federal statutory provision compelling the court either to forbid or not forbid such assistance, the court was free to exercise its discretion. The court then stated that Stockheimer would not be forbidden to have the assistance of Peterson. The court made it clear that Peterson was being granted nothing by the court, including any protection or immunity from any applicable state or federal law, and particularly those with respect to the unauthorized practice of law.

Thereafter the Stockheimer case proceeded to trial with Peterson assisting the defendant. The evidence was clear that Peterson performed the usual services of an attorney during the entire three-day trial. He sat at counsel table, conferred with Stockheimer, addressed the jury, argued motions, participated in side bar conferences and conferences in chambers, examined and cross-examined witnesses, and participated in the conference on instructions. No violation of Judge Doyle's order is claimed, nor is it claimed that there was any disturbance or other improper conduct by Peterson during the trial.

Stockheimer was convicted and on appeal to this court sought reversal on the basis that it was plain error for the court to have permitted Peterson to represent him. In an unpublished order this court affirmed the conviction upon the basis that the error committed in allowing a person not licensed to practice law to represent the defendant had been at Stockheimer's own urging, about which he would therefore not now be heard to complain.

Next followed Peterson's own indictment, jury trial and verdict of guilty for his participation in the Stockheimer case on the basis that Peterson, not being licensed, had violated the Wisconsin criminal statutes punishing the unlicensed practice of law made applicable to the federal courts by the Assimilated Crimes Act. Peterson was sentenced to 30 days in jail. This appeal followed.

■ On appeal the defendant argues that the Wisconsin prohibitions against the unlicensed practice of law are not applicable because the United States Constitution and § 1654, Title 28 U.S.C.,[2] have preempted the field. It is a conflict of law question, the defendant urges, because the Congress has legislated on a matter within its control, rendering the state legislation void. He relies in part on *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed. 562 (1975). That case stands only for the proposition that the Sixth Amendment, made applicable to the States by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has a constitutional right to represent himself and may proceed without counsel when he voluntarily and intelligently elects to do so. That case does

2. § 1654. Appearance personally or by counsel:

In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein. As amended May 24, 1948, c. 139, § 91, 63 Stat. 103.

not hold that a defendant has the freedom of choice to select a nonlicensed person as his counsel.

■ The defendant also argues that the Wisconsin Constitution, Article Seven, Section 20, providing that "In all Courts of this State any party may prosecute or defend by Counsel or Agent of his choice," permits freedom of choice as to the assistance of counsel. However, in *State ex rel. Baker v. County Court*, 29 Wis.2d 1, 138 N.W.2d 162 (1965), relied on by the trial court, the Supreme Court of Wisconsin thought otherwise, holding that the term "agent," as used in that article of the Wisconsin Constitution, had become co-extensive with the term "attorney."

The Government frames the issue this way: "Was the offense of practicing law without a license within the ambit of Section 256.30(1) and (2), Wisconsin Statutes, and incorporated by Sections 7 and 13, Title 18 U.S.C., clearly established upon the record, amply supported by evidence, and sufficient to sustain the conviction . .?"

We need not consider so much of that issue as relates to the sufficiency of the evidence which clearly demonstrated that Peterson was practicing law in behalf of Stockheimer regardless of the various terms which might be applied to the relationship.

■ The remaining part of the issue is whether or not the Wisconsin statutes prohibiting the practice of law in Wisconsin without a Wisconsin license has been assimilated into federal law as the Government claims rather than preempted by federal law as argued by the defendant.

The Government cites *Baker, supra*, for the proposition that the Wisconsin statutes prohibiting the unlicensed practice of law in Wisconsin are constitutional and through the Assimilated Crimes Act are applicable to areas of federal jurisdiction. The Government, citing *Harrison v. United States*, 128 U.S.App.D.C. 245, 387 F.2d 203 (1967), reversed on other grounds, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), does not see § 1654, Title 28 U.S.C., to be in

any way applicable since, the Government argues, § 1654 speaks to one's right to appear in the courts of the United States personally or by counsel and does not deal with a "layman masquerading as a qualified attorney." 387 F.2d at 212. *Harrison* is of no help here as that case does not concern itself with the meaning of § 1654. That case considers the problem of the admissibility of prior testimony of a defendant to be used against him at subsequent trials. The damaging testimony had been given by him at his first trial when he was represented only by an impostor, not a licensed attorney. The court condemns entrusting so precious a right as representation by counsel to one not licensed to practice, but does not address our issue. The Government also cites *United States v. Jordan*, 508 F.2d 750 (7th Cir. 1975), *cert. denied* 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 62, holding that a court is not obligated to appoint counsel of defendant's choice where the chosen attorney is not admitted to practice. Also cited are *United States v. Sexton*, 473 F.2d 512 (5th Cir. 1973), and *Lofton v. Procunier*, 487 F.2d 434 (9th Cir. 1973), which are even less in point. In *Sexton* the court refused to grant the defendant a continuance after a court appointed attorney desired to withdraw and the defendant desired an attorney retained by his family. *Lofton* involved a situation where the court favored proceeding to trial with the defendant being represented by a public defender instead of a lawyer who the defendant had subsequently retained on his own, but who could not be present for the trial unless a continuance was granted.

Judge Warren stated that this was a very unique and difficult case. We find it likewise. We find in the Peterson trial record that Peterson also sought by pretrial motion, similar to the underlying *Stockheimer* case, to have in the trial of this case the assistance of Daly, likewise disbarred. In its brief in opposition to that motion the Government stated that though it opposed the relief sought by the motion, it "respectfully submits that it is clearly within the discretion of the trial court to decide whether or not Mr. Daly will be permitted to

appear and what, if any, strictures will be placed upon his appearance if so permitted." Then after opposing the motion primarily on policy grounds without citing the very Wisconsin penal statutes at issue, the Government goes on to suggest that the court follow the procedure utilized in *United States v. Jordan, supra,* where Daly, the same person as here, was permitted to sit at counsel table with Jordan to advise him and to address the court regarding matters of law, but was prohibited from cross-examining witnesses or addressing the jury. Judge Warren refused to allow Peterson's motion, but relying on *Jordan* generally followed the Government's suggestion. During the trial of this case Daly was therefore at the conference table to confer with Peterson, but was prohibited from any other participation. The record reveals that at one point in the proceedings Judge Warren found it necessary to advise Peterson to "instruct your assistant or agent or whatever he is (Daly) to put his shoes on and quit reading the newspaper." The Government's position on that motion in this case is puzzling and could have compounded the problem. The Wisconsin definition of the practice of law, § 256.30(2), relied on by the Government in this prosecution, may be broad enough to encompass what the Government suggested to Judge Warren could be done in this case. In *Jordan* the court only held that the trial court was not obligated to appoint Daly who was not licensed, so therefore it was not error to refuse to permit Daly to participate more than that court permitted. If the Wisconsin statute prohibiting the unlicensed practice of law is the law not only of Wisconsin but through the Assimilated Crimes Act is likewise the law in the United States District Courtroom in Wisconsin, as the Government claims, then the judge would have no discretion to permit a violation of that law anymore than of any other federal law. Since the Wisconsin statute provides that a person must first be licensed in Wisconsin, literally read it would limit even the court's discretion to permit attorneys licensed in other states to be admitted on a case by case basis to practice in the federal court in Wisconsin in accordance with the court's own rules and the general custom in federal courts. It would likewise limit the exercise of the court's discretion to deal with any extraordinary case.

We hold that the Wisconsin penal statutes are not applicable to the practice of law in the federal courts in Wisconsin, but we must do so for reasons argued by neither party.

We believe that this case turns on whether or not § 13, the Assimilated Crimes Act, is applicable in these circumstances. The Wisconsin statutes become applicable to acts or omissions in the federal courts in Wisconsin under this legislation only if the act or omission in question has not also been prohibited by act of Congress. It is not necessary, however, that the federal enactment on the subject in order to prevail be of the same scope or defined in the same manner as in the state legislation. *Williams v. United States,* 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946). We note that in 1909 the term "offense" was eliminated from the Act, and that the present broader phrase, "any act or omission," was subsequently substituted. Therefore, in effect the act now reads that state penal statutes are not applicable to lands under the exclusive jurisdiction of the United States if any such acts or omissions as are punishable by state statutes have been made punishable by any enactment of Congress. The consideration of applicability of the Assimilated Crimes Act to the circumstances of this case is not without difficulty as there is no specific congressional penal "offense" concerning the unlicensed practice of law in federal courts, but such acts and omissions, we believe, are indirectly controlled.

The defendant in all criminal cases is guaranteed the assistance of counsel under the Sixth Amendment. In *Turner v. American Bar Association,* 407 F.Supp. 451 (W.D. Wis.1975), a combination of seven somewhat similar cases, Judge Garza, after an in depth study of history and precedent, concluded that "counsel" as used in the Sixth Amendment was not "meant to include a

layman off the street without qualification as to either training or character." Next in *Turner,* Judge Garza considered 28 U.S.C. § 1654, with which we are concerned:

> This Court further concludes that 28 U.S.C.A. § 1654, which was enacted to enforce the Sixth Amendment's guarantees to right to counsel, only allows for two types of representation: that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself. The statute does not allow for unlicensed laymen to represent anyone else other than themselves. 407 F.Supp. at 477.

A recent case in the Sixth Circuit considering the same general subject matter takes a little different view. *United States v. Whitesel,* 543 F.2d 1176 (6th Cir. 1976). That court believes it probable that the proposers of the Sixth Amendment did not mean to limit representation exclusively to "attorneys at law." That court also notes that the statute permits the rules of court to determine who shall be "permitted to manage and conduct causes therein." That court does not go so far as to say, however, "that any defendant can choose any person he wishes, regardless of qualification, to be his counsel in the trial of a criminal case." *Whitesel, supra* at 1179.

For the purposes of our case we need not try to resolve the broader related issues considered in *Turner* and *Whitesel.* Those cases do highlight, however, the fact that Congress has enacted § 1654, imposing some limits on representation, and recognized the power of the courts in their discretion by their own rules to control the conduct of causes before them. In a related application of § 1654 we recently held that the right of a party to conduct his case personally would not be enlarged to permit an unlicensed individual to act in behalf of or as an agent for a corporation even though that person was the president of that corporation. *Strong Delivery Ministry Ass'n. v. Board of Appeals of Cook County, et al.,* 543 F.2d 32 (7th Cir. 1976). However, the unauthorized practice in violation of § 1654 is not in that section or elsewhere made specifically punishable. That section must be read in connection with other congressional enactments for the purposes of the present case.

■ Section 401, Title 18 U.S.C., is to be considered in that regard. It provides in part:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
>
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

We believe the unauthorized practice of law in federal courts in violation of § 1654 and the rules of the court to constitute "misbehavior" within the broad meaning of that term, and that such practice could tend to obstruct the administration of justice. The use of the contempt power to punish in such circumstances is not new and it is adequate. *Heiskell v. Mozie,* 65 App.D.C. 255, 82 F.2d 861 (1936). The case of *Morgan v. United States,* 114 U.S.App.D.C. 13, 309 F.2d 234 (1962), *cert. denied,* 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963), and 380 U.S. 984 (1965), also illustrates how other federal penal statutes may become applicable in unlicensed practice of law circumstances, although these are not involved in the present case as Peterson did not attempt to mislead the court as to his status. That in the *Stockheimer* trial Judge Doyle chose to permit the unlicensed representation rather than to prohibit it does not alter the impact which this federal statutory scheme, combined with the inherent powers of the court, has upon the application of the Assimilated Crimes Act. We believe the Assimilated Crimes Act is not applicable here. We find nothing to suggest that Congress intended by that Act to make state penal statutes applicable to the practice of law in federal courts. There are adequate and traditional means provided by the Congress and inherent in the federal courts to control, prohibit or punish the unlicensed practice of law before them which makes unnecessary reliance by the federal courts upon the various and differing state penal provisions or

lack thereof. The issue decided here is a narrow one, and in reversing we do not intend to imply that the unlicensed or unauthorized practice of law will be sanctioned in this circuit.

Therefore, the judgment is reversed and this cause is remanded to the trial court with directions to vacate the judgment of conviction and to dismiss the indictment as failing to allege an offense against the United States.

REVERSED AND REMANDED.