UNITED STATES of America

v.

WILHELM, Robert Eugene, Appellant.

UNITED STATES of America

v.

ROBERTS, Edward A., Appellant.

UNITED STATES of America

v.

HOUSER, Kenneth Lewis, Appellant.

Nos. 77-1568, 77-1613 and 77-1614.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Nov. 29, 1977.

Decided Jan. 23, 1978.

Robert Eugene Wilhelm, pro se.

Edward A. Roberts, pro se.

Kenneth Lewis Houser, pro se.

James W. Garvin, Jr., U. S. Atty., John H. McDonald, Asst. U. S. Atty., Wilmington, Del., for appellee.

Before GIBBONS and VAN DUSEN, Circuit Judges, and FISHER, District Judge.[*]

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

These appeals challenge the validity of a ruling of the United States District Court for the District of Delaware denying three criminal defendants the right to be represented at trial by a person who was not a member of the bar of that court. These appeals are from judgment and probation-commitment orders imposed after guilty verdicts were returned in separate jury trials on multiple counts of separate informations, charging each defendant with multi-

---

[*] Honorable Clarkson S. Fisher, United States District Judge for the District of New Jersey, sitting by designation.

ple violations of 26 U.S.C. § 7205 (1970),[1] in that defendants had made false statements on withholding certificates (Form W–4) or withholding exemption certificates (Form W–4E) with their employer, Getty Refining and Marketing Company.[2] After the informations were filed on November 16, 1976, each defendant filed on November 24, 1976, a form giving notice of the appointment of "George A. Bomher" as his counsel "to assist said Defendant in defending himself . . . in this action," to which there was attached a copy of a contract between each defendant and Bomher, who was designated as "Advocate" and who contracted to assist the defendant in his defense of the criminal action. There was also attached an affidavit stating as follows:

"I. Affiant's religious convictions and conscience forbid Affiant from seeking or receiving assistance or representation from any so-called licensed attorney or any other officer of the court; and

"II. Under the penalties of perjury Affiant hereby swears and affirms that Affiant is personally incompetent to effectuate a good defense in Affiant's own behalf and that Affiant has confidence in Affiant's counsel of notice."

Document 3 in Criminal Nos. 76–112, 76–113 & 76–114 (D.Del.).

Each defendant appeared for arraignment on November 24, 1976, without counsel admitted to the bar. The district court judge continued the arraignments for one week to permit the defendants to secure counsel admitted to the bar or to prepare to represent themselves.

On December 1, 1976, each defendant reappeared for arraignment and renewed his attempt to be represented by Mr. Bomher. On inquiry of Mr. Bomher, the court learned that he was not admitted to the bar of any court nor had he ever graduated from law school.[3] When the court refused to permit a non-lawyer to appear before it as defendants' attorney, each defendant elected to represent himself rather than to accept court-appointed counsel.

Following the entry of not guilty pleas, the court explained to the defendants that Mr. Bomher would be permitted to be in the courtroom with the defendants during the trial but that he would not be allowed "to act as a lawyer in the Courtroom" for the reasons stated in *United States v. Whitesel*, 543 F.2d 1176 (6th Cir. 1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977).[4]

---

1. 26 U.S.C. § 7205. "Any individual required to supply information to his employer under Section 3402 [of 26 U.S.C.] who willfully supplies false or fraudulent information . . . shall . . . upon conviction thereof, be fined not more than $500, or imprisoned not more than one year, or both."

2. Each defendant was employed by Getty as a truck driver.

3. N.T. 13–14 of transcript of 12/1/76.

4. The transcript of the arraignment on December 1, 1976, includes the following wording, after the entry of the not guilty pleas:
   "The Court: You've been advised that Mr. Bomar [sic] will not be permitted to represent you in this Courtroom. Mr. Bomar, of course, can accompany you to the Courtroom, and he will be permitted to sit at the counsel table, although in each individual case that will be up to the Judge trying the case. But he will not be permitted to act as a lawyer in the Courtroom. And I suggest that all you gentlemen read *U. S. v. Whitesel*. And I now tell you, Mr. Wilhelm, about that case, which is out of the Sixth Circuit, and it was filed on October 22, 1976, with the Clerk of the Court of the Sixth Circuit.
   "There is good reason, gentlemen, you may disagree with it. But the reason is very, very simple. Courtrooms have very, very serious business conducted within them, and because litigation is conducted by rules, and because there are rules of evidence, and because there are important substantive points of law that can affect every trial, at a minimum to assure a person their rights, there is a licensing and an admission requirement before a person can practice law.
   "Now, if we were to follow out what you gentlemen wish to do, it would mean that anyone could come in and represent anyone who is accused of any criminal offense. And all that person would have to do would be to convince the defendant that they are more capable or more skilled than an attorney. Then we would have chaos in the courts. . . . Now, gentlemen, if you will read the case that has been cited to you, plus what I have tried to explain to you, there is a reason the Court is taking the position it is taking today.

The defendants filed identical pre-trial motions after arraignment, which were denied in *United States v. Roberts,* 425 F.Supp. 1281 (D.Del.1977).

The defendants were tried in February and March 1977.[5] At the beginning of each trial, each defendant attempted to read as part of his opening statement, and did file with the court, a likeworded "Defendant's Statement and Request to Take Notice," which reads in part as follows:

"Defendant herein respectfully declines to make any effort to defend himself . . . for the following reasons:

"1. I have no knowledge, training, or experience in courtroom procedure.

"2. I stated in an Affidavit filed in this Court that I was incompetent to defend myself.

"3. I filed a Notice of Appointment of Counsel (not a licensed attorney)—the Court denied me the assistance of such Counsel.

"4. I filed a Motion to represent myself Pro Se with the assistance of Co-Counsel (not a licensed attorney)—the Court denied this Motion.

"5. I honestly believe that anything I might do in attempting to defend myself would hurt rather than help my case."

*E. g.,* Document 30 in Criminal No. 76–112 (D.Del.).

"I, of course, am relying on *U. S. v. Whitesel* as my authority for what I am doing. Do any of the three of you have any questions?
"Mr. Roberts: Yes.
"The Court: Yes?
"Mr. Roberts: I understood you to say that Mr. Bomar can sit at counsel table?
"The Court: He can sit at the counsel table if I am presiding at the trial. That is a prerogative that will be left up to the individual judge.
"Mr. Roberts: Say you were the Judge, and he could sit at the counsel table. Would you permit me to talk to him at the counsel table while I was on trial?
"The Court: We'd have to take it as it comes. When you are on the stand, generally you can't talk to your lawyer when you are asked a question.
"Mr. Roberts: Well, I mean could I confer with him before I went to the stand?

The defendants were sentenced in April 1977 to three months in prison, to be followed by a probationary term of two-and-one-half years, on condition, *inter alia,* that defendants file proper withholding certificates with the employer and proper federal income tax returns for 1977 and 1978.

Each defendant, having filed a written Motion for Judgment of Acquittal at the close of the Government's case-in-chief, filed, post-trial, a Renewal of Defendant's Motion for Judgment of Acquittal claiming, *inter alia,* that the court erred

(1) in denying defendant's pre-trial motions and requests;

(2) in allowing his case to go to trial without defendant having received from the Government the discovery to which he was entitled;

(3) in failing to protect defendant's right to a fair and impartial jury trial when the court knew defendant lacked knowledge, training and experience to defend himself.[6]

## I.

■ The defendants' principal contention is that the district court judgments should be reversed because they were denied their constitutional right to chosen counsel by the district court's refusal to permit them to be represented by a lay person. The Sixth Amendment to the United States Constitu-

"The Court: You can confer with him before you take the stand. You can confer with him in filing any motions you want to file. But he will not be permitted to practice law in this Court. And you gentlemen, of course, are proceeding at your own risk. You have knowingly and voluntarily make [sic] that choice. Any other questions?
"Mr. Wilhelm: No.
"Mr. Roberts: No.
"Mr. Houser: No.
"The Court: Thank you, Mr. Wilhelm."
(N.T. 22–24 of transcript of 12/1/76)

5. Wilhelm was tried on February 28 and March 1 before Chief Judge Latchum, Houser on March 3 and 4 before Judge Schwartz, and Roberts on March 10 before Judge Steel.

6. Each defendant offered other grounds in support of his post-trial acquittal motion, but has not raised those grounds on appeal.

tion provides in part that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." Defendants ask us to construe the Sixth Amendment's reference to "Counsel" as embracing any person of their choice, be he unskilled in the law or barred by the rules of court from practice before it. To so hold would profoundly alter the legal framework in which criminal proceedings are scrupulously conducted in our courts. We decline to do so.

Contemporaneous to the adoption of the Sixth Amendment and therefore reflective of its intended meaning, Congress enacted § 35 of the Judiciary Act of 1789, 1 Stat. 73, 92,[7] which as codified at 28 U.S.C. § 1654 (1970) now provides:

> "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

We recognize that in some colonies where the Quaker influence predominated, the right to plead pro se or by a friend was permitted. However, there is no suggestion in the ratifying debates that there was an intention to preserve this Quaker practice. To the contrary, the predominant historical practice of representation before English and colonial courts,[8] as well as the First Congress' passage of § 35 of the Judiciary Act of 1789, makes clear that the Sixth Amendment was not intended to guarantee defendants the right to be represented by friends who are not trained in the law nor authorized to practice before a particular court. Professional qualifications were assumed of all "counsel" chosen to represent defendants in criminal proceedings. Defendants have cited to us no authority to the contrary other than the sincerity of their beliefs. Thus, we join with the impressive array of United States Courts of Appeals that have uniformly rejected the contention that criminal defendants have a constitutional right to be represented by a friend who is neither a law school graduate nor a member of the bar.[9] We note that the defendants in the case at hand were informed of their now well established Sixth Amendment rights to be represented by court-appointed counsel if indigent [10] or to represent themselves.[11]

The Supreme Court held in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), that a criminal defend-

---

**7.** The Judiciary Act of 1789 was signed by President Washington one day before Congress proposed the Bill of Rights to the states. *See Faretta v. California,* 422 U.S. 806, 812–13, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). At its second session, in April 1790, Congress also adopted the following provision, ch. 9, § 29, of the Act of April 30, 1790, 1 Stat. 118:

> "[E]very person so accused and indicted for [treason or other capital offences] shall also be allowed and admitted to make his full defence by counsel learned in the law;"

**8.** The common law development in both England and colonial America of representation of criminal defendants by skilled attorneys has been amply documented by Judge Garza in *Turner v. American Bar Association,* 407 F.Supp. 451, 472–74 (N.D.Tex.1975). *See also Faretta v. California,* 422 U.S. 806, 821–32, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In a series of consolidated cases brought by persons of like mind with the defendants in the instant case, Judge Garza held that:

> "This Court cannot find even a suggestion in the history of the Common Law . . . that the word 'counsel,' as used in the Sixth Amendment, was meant to include a layman

off the street without qualification as to either training or character."

*Id.* at 474.

**9.** *United States v. Cooper,* 493 F.2d 473, 474 (5th Cir.), *cert. denied,* 419 U.S. 859, 95 S.Ct. 108, 42 L.Ed.2d 93 (1974); *United States v. Whitesel,* 543 F.2d 1176, 1177–80 (6th Cir. 1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977); *United States v. Jordan,* 508 F.2d 750, 753 (7th Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 62 (1975); *United States v. Pilla,* 550 F.2d 1085, 1093 (8th Cir.), *cert. denied,* —— U.S. ——, 98 S.Ct. 247, 54 L.Ed.2d 166 (1977); *United States v. Kelley,* 539 F.2d 1199, 1201–03 (9th Cir.), *cert. denied,* 429 U.S. 963 (1976); *United States v. Grismore,* 546 F.2d 844, 847 (10th Cir. 1976); *United States v. Irwin,* 561 F.2d 198, 200 (10th Cir. 1977).

**10.** *See Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

**11.** *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

ant has a Sixth Amendment right of self-representation to voluntarily and intelligently reject court-appointed counsel and to proceed to defend himself without assistance of counsel. The defendants in this case argue that the Supreme Court's recognition of a constitutional right of self-representation implies a power to delegate representation to lay persons of their choosing. The defendants reason that if a defendant who is not a lawyer may serve as his own counsel, then other lay persons should be considered similarly qualified to serve as counsel. Defendants' contention is without merit.

*Faretta* did not hold that a lay defendant's right of self-representation was encompassed by the "assistance of counsel" clause. Rather, the Supreme Court discerned the right of self-representation as independently rooted in the structure of the Sixth Amendment, which personally guarantees the defendant the rights to be "informed of the nature and cause of the accusation" and to be "confronted with the witnesses against him." 422 U.S. at 819–20, 95 S.Ct. at 2533. Thus, *Faretta* recognized two independent Sixth Amendment rights of representation—the right of self-representation and the right to assistance of counsel. There is no comparable Sixth Amendment source of a right to delegate the power of self-representation to lay persons who do not qualify to render the assistance of counsel.[12]

▇▇▇ Having held that defendants had no constitutional right to insist upon lay representation, we need only consider whether the district court abused its discretion in denying a request for lay representation. The district court may have properly been guided by the following rules of court pursuant to 28 U.S.C. § 1654 in deciding whether to permit these particular defendants to choose lay representation. The United States District Court for the District of Delaware has provided in its Civil Rule 4 that only lawyers who have been "admitted to practice in [its] court" may act as counsel for parties in cases pending before it.[13] Although the United States District Court for the District of Delaware has no Criminal Rules, Rule 57(b) of the Federal Rules of Criminal Procedure provides under the title "Rules of Court:"

> "(b) Procedure Not Otherwise Specified. If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute."

Thus, when the court, after inquiry of Mr. Bomher's qualifications, ruled that Mr. Bomher could not serve as counsel for the defendants, it was proceeding "in a lawful manner and not inconsistent[ly] with" the Federal Rules of Criminal Procedure. See F.R.Crim.P. 57(b), *supra.*

It is true that the district court relied on *United States v. Whitesel,* 543 F.2d 1176 (6th Cir. 1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977), which authorizes trial or arraignment judges to exercise their discretion and permit lay representation in extraordinary cases. *See also Turner v. American Bar Ass'n,* 407

---

**12.** The *Faretta* Court emphasized that the right of self-representation does not arise by implication from the right to waive assistance of counsel but is independently inferred from other explicit guarantees. 422 U.S. at 819–20 n.15, 95 S.Ct. 2525. Similarly, an "independent right to the assistance of a non-lawyer cannot be mechanically inferred from the right to waive the assistance of [counsel] and to represent oneself, even though self-representation will usually result in advocacy by a non-lawyer." *United States v. Kelley,* 539 F.2d 1199, 1202 (9th Cir.), *cert. denied,* 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1976).

**13.** Civil Rule 4, United States District Court for the District of Delaware, provides:

> "1. The Bar of this Court shall consist of those persons heretofore admitted to practice in the Court and those who may hereafter be admitted in accordance with these rules.
> "2. Any attorney admitted to practice by the Supreme Court of Delaware may be admitted to the Bar of this Court on motion of a member of the Bar of this Court made in open Court . . ..
> "3. Attorneys who were not admitted to practice by the Supreme Court of Delaware may be admitted pro hac vice to the Bar of this Court in the discretion of the Court, such admission to be at the pleasure of the Court."

F.Supp. 451, 478 (N.D.Tex.1975). However, the standards for the exercise of such discretion prescribed by Judge Edwards in *Whitesel* are equally applicable here:

"[F]or a District Judge to exercise his discretion to allow a person to try a case who was not a member of the bar of the court and who had not qualified by taking the required examination, would at a minimum require a showing that such person was sufficiently learned in the law to be able adequately to represent his client in court."

543 F.2d at 1180.

Mr. Bomher was neither admitted to the bar of any court nor a graduate of an accredited law school. Moreover, there was no demonstration that Mr. Bomher possessed the minimum legal learning to justify an extraordinary order permitting him to represent the three defendants. For the foregoing reasons, we hold, as Judge Edwards did in *Whitesel,* that the district court did not abuse its discretion in denying defendants representation by a lay person unlearned in the law.[14]

## II.

The following additional contentions of defendants have been carefully considered in light of the district court record and rejected:

A. The failure to make available to counsel evidence disclosable under F.R. Crim.P. 16 requires reversal.

B. Trial with the ineffective assistance of counsel requires reversal.[15]

C. A sentence including three months' imprisonment constitutes a discriminatory abuse of discretion and cruel and unusual punishment.

The district court judgment and probation-commitment orders will be affirmed.

---

**14.** In *Whitesel,* the defendant sought representation by an accountant with no training in the law. The trial court there had approved the same arrangements as were authorized in the instant case that permitted the untrained lay person to sit at the counsel table and confer with the defendant, but did not permit the lay adviser to address either the witnesses, jury or the court.

**15.** We note that the Supreme Court said in *Faretta, supra,* that:

"[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.' "

422 U.S. at 835 n.46, 95 S.Ct. at 2541.