**UNITED STATES of America,**
**Plaintiff,**

v.

**Thomas F. STOCKHEIMER, Defendant.**
**No. 74–CR–72.**

United States District Court,
W. D. Wisconsin.

Dec. 4, 1974.

David C. Mebane, U. S. Atty., Madison, Wis., for plaintiff.

Thomas F. Stockheimer, pro se.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

On November 20, 1974, defendant filed a motion for an order "to allow Gordon Peterson a person not licensed by any Court or Governmental Agency, but only licensed by Petitioner by this Power of Attorney, to be and act as Counsel and spokesman for Petitioner before the Court at the pleasure and direction of Petitioner." At the foot of the motion is a consent signed by Gordon Peterson "to act as spokesman and agent for Petitioner herein by his license and Power of Attorney, at his direction and pleasure."

On November 29, 1974, defendant filed a motion for an order "declaring

that Defendant has the right to have Jerome Daly, a person not licensed by any court or governmental agency, to accompany and speak for Defendant at Defendant's direction and pleasure. . . ." At the foot of the motion is a consent signed by Jerome Daly, stating that he is "not licensed by any department of the State or Federal Government nor . . . [a] member of any Bar Association . . .," and consenting "to be licensed by Thomas Stockheimer only and . . . to speak for him at his direction and on his behalf in the above entitled action."

On November 20, 1974, I entered an order setting a hearing on defendant's November 20, 1974, motion for December 2, 1974. In the said order, I provided that defendant's motion would be denied unless Gordon Peterson was present at the December 2 hearing, prepared to testify under oath concerning his qualifications to act as counsel. At the December 2 hearing, Gordon Peterson was present and was examined under oath. At the said hearing, it was agreed by the defendant that the defendant's November 29, 1974, motion with respect to Jerome Daly might also be considered at said hearing and, over the objection of the United States, it was ordered that the hearing would be directed to both the November 20 motion with respect to Gordon Peterson and the November 29 motion with respect to Jerome Daly, provided, however, that because of the absence of Jerome Daly, the court might conclude that a further hearing as to him would be required.

At the December 2 hearing, in response to the court's question, defendant explained that his November 29 motion supplemented, rather than superseded, his November 20 motion, and that he desired both to be granted so that both Gordon Peterson and Jerome Daly could assist defendant in this action; Gordon Peterson declared that he consented to serve with Jerome Daly.

Upon the basis of the entire record herein, including my own observations of the defendant on several occasions in court, I find as fact those matters set forth herein under the heading "Facts."

## Facts

Defendant is 42 years of age and has a high school education. He is a person of no less than average intelligence; he is unusually interested in the subject of the law and the courts; and he has acquired a degree of knowledge about the law. Nevertheless, without the assistance of counsel, he is not qualified to defend himself effectively in this case. For example, he is not qualified to conduct legal research and to engage in legal analysis in order to determine whether serious grounds may exist for the dismissal of the indictment, nor qualified to know when to object or not to object to questioning of witnesses by the United States Attorney, nor qualified to conduct an effective cross-examination, nor qualified to choose among alternative trial strategies and tactics nor to execute effectively the course chosen. Nor is the defendant qualified to form a sophisticated opinion about the comparative qualifications of other persons, whether or not licensed to practice law, to serve as counsel for a defendant in a criminal prosecution.

Defendant understands that he is entitled to employ as his attorney any licensed member of the bar; and that if he is financially unable to pay a member of the bar to represent him, then, upon a proper financial showing, a member of the bar will be appointed by the court to represent him at public expense. Defendant also understands that it is the opinion of this court that he is entitled to undertake to defend himself in this action, without the assistance of a member of the bar. Since the indictment was returned herein August 21, 1974, he has knowingly, understandingly, and voluntarily given up his right to be represented by a member of the bar, whether at his own expense or at public expense, and he has undertaken to defend himself.

Knowingly, intelligently, and voluntarily, defendant has decided that he desires the assistance of Gordon Peterson and Jerome Daly in the defense of this case. He trusts Gordon Peterson and Jerome Daly, and he believes that they generally share his philosophy and opinions concerning the constitutional rights of citizens of the United States.

Gordon Peterson is a graduate of a law school. From about 1942 until 1961, he was a member of the Minnesota bar, licensed to practice law in that state. During that period, he engaged in active practice, including the representation of defendants in criminal cases. In 1961, his license to practice law in Minnesota was revoked, according to the procedures then observed in that state. The grounds of revocation related to alleged dishonesty in his professional dealings. Since 1961, Gordon Peterson has not practiced law. He has engaged in various business enterprises. In about 1967, he petitioned unsuccessfully for reinstatement of his Minnesota license to practice law. Recently, he has filed another petition for reinstatement, which is pending. Since 1961, he has maintained his interest in the law, and has made an effort to remain aware of developments in the law, including constitutional law and criminal law. Quite apart from the fact that he is not presently licensed to practice law, he is not presently professionally qualified to serve effectively as an attorney for a defendant in a criminal case.

For some years prior to October 1, 1969, Jerome Daly was a member of the Minnesota bar, licensed to practice law in that state. As of that date, his privilege to practice law was suspended by the Supreme Court of Minnesota (284 Minn. 567, 171 N.W.2d 818), and, on July 16, 1971, an order of disbarment was entered by said court. The grounds of disbarment consisted of various actions by Daly found by the court to reflect "professional irresponsibility."

The decision by the defendant herein that he desires the assistance of Gordon Peterson and Jerome Daly has been arrived at with the knowledge on defendant's part that both persons have been disbarred in Minnesota, and with knowledge of the reasons for the disbarments as set forth by Gordon Peterson in his testimony in this court December 2, and as set forth in the July 16, 1971, opinion of the Supreme Court of Minnesota with respect to Jerome Daly.

There are presently pending in this court four civil suits in which the plaintiff is the Thomas Stockheimer who is also the defendant in the present criminal case. In 74–C–292, the defendants are a bank, its officers and attorney, and a judge of a state trial court; the essence of the complaint is that the defendants conspired to deprive Thomas Stockheimer of a jury trial in a civil proceeding in the state trial court. In 74–C–293, the defendants include persons who are alleged to be an agent of the Internal Revenue Service (IRS) and his wife, a director of an IRS local office, three United States Attorneys, the State Bar of Wisconsin, and the American Bar Association; the essence of the complaint against the individual defendants is that they conspired to harm Thomas Stockheimer in connection with certain federal grand jury proceedings in this district; the essence of the complaint against the State Bar of Wisconsin and the American Bar Association is that they control the source of legal services, with the result that plaintiff is denied the choice of counsel whom Thomas Stockheimer may trust. In 74–C–359, the defendants include persons who are described as officials of the Department of Natural Resources (DNR) of the State of Wisconsin, the governor and the attorney general of Wisconsin, capitol police officers, and local police officers; the essence of the complaint is that certain proceedings were conducted by the DNR in an unconstitutional manner and that the defendant police officers acted to facilitate such improper proceedings. In 74–C–384 the defendants include two assistant United States Attorneys, an IRS officer, two newspaperpersons, and me; the essence of the complaint is that

the defendants conspired, through the publication of certain newspaper articles, to deprive Thomas Stockheimer of a fair trial and to defame him.

The motion filed November 20, 1974, by the defendant in the present case contains allegations to the effect that the practices of the American Bar Association and of the various state bar associations, and the laws concerning the licensing of persons to practice law, represent a violation of the antitrust laws and a deprivation of defendant's constitutional rights.

## Opinion

Under the Fifth Amendment, defendant may not be deprived of his liberty or property without due process of law. Under the Sixth Amendment, in this criminal prosecution, defendant enjoys the right to assistance of counsel for his defense.

■■ I consider that the "counsel" to whose assistance a defendant is entitled by the Sixth Amendment is a person who is legally trained and qualified to perform the function of an attorney for a defendant in a criminal case. See Harrison v. United States, 128 U.S.App. D.C. 245, 387 F.2d 203, 212 (1967); McKinzie v. Ellis, 287 F.2d 549 (5th Cir. 1961). I am not prepared to hold that the term "counsel," as used in the Sixth Amendment, includes only persons licensed by some state to practice law, and that the federal constitutional provision is thus limited by what the various states may choose to do about licensing. But I am prepared to hold, and do hold, that neither Gordon Peterson nor Jerome Daly is "counsel," within the meaning of the Sixth Amendment. It follows that the Sixth Amendment does not guarantee the defendant the right to the assistance of Gordon Peterson or Jerome Daly for his defense. It also follows that, absent an effective waiver, a conviction of the defendant in this case would not be valid if it followed proceedings in which he was represented by either Gordon Peterson or Jerome Daly.

■ I hold that a defendant may waive the Sixth Amendment right to the assistance of counsel, provided that the waiver is made knowingly, intelligently, and voluntarily, and I hold that such a waiver is effective whether or not the prosecution joins in it.[1] I hold that a defendant may defend himself. United States v. Plattner, 330 F.2d 271 (2d Cir. 1963); United States v. Condor, 423 F.2d 904 (6th Cir. 1970); Arnold v. United States, 414 F.2d 1056 (9th Cir. 1969). I hold that this defendant has effectively waived the right to assistance of counsel guaranteed him by the Sixth Amendment, and that thus far in this proceeding, he has made an effective choice to defend himself.

■ The question arises whether a defendant in a federal criminal case who has effectively waived his Sixth Amendment right to the assistance of counsel nevertheless enjoys a right, under the due process clause of the Fifth Amendment or under any other provision of the Constitution of the United States, to the assistance of a person other than "counsel," as "counsel" is used in the Sixth Amendment. I hold that there is no such federal constitutional right. For constitutional purposes, it is sufficient to guarantee "counsel," as the term is used in the Sixth Amendment.

While the Constitution does not guarantee this defendant the right to assistance by a person other than "counsel" as "counsel" is used in the Sixth Amendment, neither does it forbid him such assistance, unless the due process clause of the Fifth Amendment should be construed so as to protect the defendant from what may or may not prove to be his folly. In my view, the Fifth Amendment should not be so construed. Those experienced in the work of the courts, including the conduct of criminal cases, are likely to consider it foolish indeed for a defendant to under-

1. I am aware that this issue appears presently to be before the Supreme Court of the United States. Forette v. California, No. 73–5772. 43 L.W. 3301.

take to defend himself or for a defendant to enlist the assistance of persons other than those licensed to practice law, but, if the choice is made knowingly, intelligently, and voluntarily, I do not believe that the Constitution should be read to forbid it.

■ The defendant has filed motions for orders "to allow Gordon Peterson . . . to be and act as Counsel and spokesman," and "declaring that Defendant has the right to have Jerome Daly . . . accompany and speak for Defendant. . . ." I decline to grant such motions and to enter such orders. I prefer to treat the matter as follows: that by filing notices that he has "appointed" or "licensed" them, this defendant has announced his intention to avail himself of the assistance of Gordon Peterson and Jerome Daly in the defense of this case; and that defendant has sought to learn from the court, in advance of trial, whether the court will forbid him to do so. I consider that in the absence of any constitutional or federal statutory provision compelling me either to forbid or not to forbid the defendant such assistance, I may exercise my discretion in the matter.

Clearly, this defendant entertains a massive distrust of the organized bar, and no licensed member of the bar of this state or of another state enjoys his trust. With all his options known to him and understood by him, he has decided to risk conviction and possible imprisonment for three years without the assistance of a person licensed to practice law. But he has also decided not to risk these consequences in a trial in which he defends himself with no assistance. He has decided to risk these consequences in a trial in which he has the assistance of Gordon Peterson and Jerome Daly.

Whether it has ever been so I do not know, but it is plain that this is a time in the history of the United States in which the members of various groups on the right and on the left, and members of racial and religious minorities, are experiencing a strong sense of alienation and are deeply suspicious and distrustful of our institutions, including the courts and the organized bar. Obviously, those who have accepted the responsibility for the management and operations of these institutions are not free to abandon them or to subvert or distort them in response to such suspicion, distrust, and hostility. To abandon, subvert, or distort the institutions would be destructive of many values, and the odds are heavy that it would fail, in any event, to remove the suspicion, distrust, and hostility. For example, in the present case, if the defendant is not forbidden the assistance of Gordon Peterson and Jerome Daly, but if defendant is convicted following the procedures prescribed by law, it seems idle to suppose that his sense of alienation will be the less.

Nevertheless, it seems wiser not blindly to ignore the existence of the suspicion, distrust, and hostility widely harbored against many institutions, including the courts, but rather to make some accommodations which may tend to dissipate these attitudes in some degree among some groups and which involve no significant distortions of the process or unmanageable problems.

■ I have concluded that in the defense of this criminal prosecution initiated against him by the government, this defendant should not be flatly forbidden the assistance of persons not licensed to practice law.[2]

Having reached this conclusion, I could have reached with ease the further conclusion that defendant should not be forbidden the assistance of a carpenter or a farmer, if preliminary inquiry indicated that the participation of the particular carpenter or the particular farmer did not appear to threaten the orderly conduct of the trial. But this defendant

2. The applicable considerations will vary, of course, from situation to situation: civil lawsuits generally, civil lawsuits by prisoners, probate, administrative proceedings, and so on.

has compounded the difficulty. With complete sincerity, I am willing to assume, he has "appointed" or "licensed" to assist him two persons who have had legal training and experience, but whom the Supreme Court of their state has declared unfit to practice law. With great reluctance, I have concluded that from the viewpoint of a defendant in a criminal case, there is no rational distinction to be made between forbidding him the assistance of a carpenter or a farmer whom he trusts and forbidding him the assistance of a disbarred lawyer whom he trusts.

I have concluded that in the particular circumstances of this case, defendant should not be forbidden the assistance of Gordon Peterson.

I have concluded that I lack sufficient information to decide whether defendant should be forbidden the assistance of Jerome Daly. I will permit the defendant and Jerome Daly to furnish additional information prior to trial. If I conclude thereafter that assistance to the defendant from Jerome Daly does not appear to threaten the orderly conduct of the trial, I will not forbid it.

By this opinion and order, I intend to grant defendant nothing. I intend only to notify him that he will not be forbidden the assistance of Gordon Peterson and that he may or may not be forbidden the assistance of Jerome Daly.

█ Neither Gordon Peterson nor Jerome Daly has sought anything from this court, and neither has been granted anything. Neither by this opinion and order, nor by any subsequent action by me in this case, do I intend to afford either Gordon Peterson or Jerome Daly any protection or immunity whatever from the operation of any laws, state or federal, which may apply to them and their activities, particularly those laws of the states of Minnesota and Wisconsin with respect to the unauthorized practice of law. In all these respects, Gordon Peterson and Jerome Daly proceed at their own risk.

Also, by this opinion and order, I do not intend or imply that in the course of proceedings in this case, the court will accord to Gordon Peterson or Jerome Daly any or all of the privileges and amenities which it would normally accord to counsel who are licensed to practice law and subject to the internal discipline of the organized bar, or, as officers of the court, to the special discipline of the court. I intend to assume the best, and to proceed in the manner normal to cases in which a defendant is represented by counsel licensed to practice law, but I intend also to adapt the procedures promptly and freely as events may require.

### Order

Upon the basis of the entire record herein, it is ordered that:

1. The defendant is not forbidden the assistance of Gordon Peterson in the defense of this action.

2. Unless Jerome Daly and the defendant appear in this court at Madison at 11:30 a.m., December 10, 1974, and unless Jerome Daly is prepared at that time to testify, under oath, concerning his qualifications to assist the defendant in the defense of this action and concerning his intentions with respect to the manner of the assistance to be provided, the defendant will be forbidden the assistance of Jerome Daly in the defense of this action. If the defendant and Jerome Daly appear at such place and time, and if Jerome Daly then testifies under oath, the court will proceed to decide whether the defendant will be forbidden the assistance of Jerome Daly in the defense of this action.