**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard Lyle KELLEY,**
**Defendant-Appellant.**

**No. 75–2820.**

United States Court of Appeals,
Ninth Circuit.

May 27, 1976.
Certiorari Denied Nov. 15, 1976.
See 97 S.Ct. 393.

Richard L. Kelley, in pro. per.

Harry McCarthy, Asst. U. S. Atty. (argued), Seattle, Wash., for plaintiff-appellee.

## OPINION

Before KOELSCH and WALLACE, Circuit Judges, and BURNS,* District Judge.

---

* Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation.

WALLACE, Circuit Judge:

Kelley appeals from his conviction after a jury trial on two counts of willfully supplying false information on withholding exemption certificates in violation of 26 U.S.C. § 7205.[1] He raises three principal issues. First he argues that he had a right to be represented by a non-lawyer. He next contends that he did not incur income tax liability since he was not paid in lawful dollars. Finally he asserts that the district court erred in its instruction to the jury on willfulness. We affirm.

Kelley apparently believes that since Federal Reserve notes are not redeemable in gold or silver, they are not "dollars." Thus, the argument goes, one who receives his income in paper dollars receives no dollar income upon which he can be taxed. Kelley filed a return for 1973, but it contained no financial information other than the amount withheld from his wages. The IRS district director notified Kelley in May 1974 that his return was unacceptable. Kelley replied in June 1974 that he did not "receive any dollars as income for the year 1973." Kelley also enclosed amended returns for 1971 and 1972 requesting a refund of all taxes paid based upon the same reasoning. He was employed as a truck driver during this period, earning gross wages in excess of $10,000 for each year from 1971 through 1974.

In accordance with his monetary theory, Kelley had also submitted to his employer two W–4E forms upon which his convictions are based. In the first form, dated January 15, 1973, he certified under penalty of perjury that he had incurred no federal income tax liability for 1972 and anticipated no liability for 1973. On June 15, 1974, Kelley filed the second W–4E form in which he certified that he had not incurred any tax liability for 1973 and did not expect to be liable for income taxes in 1974.[2] An information was filed charging that Kelley knew the statements in these forms were false.

■ Kelley sought to have his trusted friend Hurd, who was well-versed on Kelley's monetary theory, serve as trial counsel. Hurd is a roofer and not a licensed attorney. The district court denied the request and prohibited Hurd from sitting at the counsel table or consulting with Kelley during the course of the trial. Consultations during recesses were permitted. Kelley refused to allow a court-appointed counsel to represent him, although an attorney was directed to serve in an advisory capacity.[3] Kelley represented himself during trial and on this appeal.

## I. Right to Non-Lawyer Counsel

Kelley's first contention is that the refusal to allow Hurd to serve as counsel violated

1. The statute provides:
   Any individual required to supply information to his employer under section 3402 who willfully supplies false or fraudulent information, or who willfully fails to supply information thereunder which would require an increase in the tax to be withheld under section 3402, shall, in lieu of any other penalty provided by law . . . upon conviction thereof, be fined not more than $500, or imprisoned not more than 1 year, or both.
   26 U.S.C. § 7205.

2. 26 U.S.C. § 3402(n) (Supp.1976) provides in part:
   [A]n employer shall not be required to deduct and withhold any tax under this chapter upon a payment of wages to an employee if there is in effect with respect to such payment a withholding exemption certificate . . . furnished to the employer by the employee certifying that the employee—

   (1) incurred no liability for income tax imposed under subtitle A for his preceding taxable year, and
   (2) anticipates that he will incur no liability for income tax imposed under subtitle A for his current taxable year.
   Due to his employer's computer programming error, small amounts were nevertheless withheld from Kelley's wages in 1973 and 1974.

3. A judge may appoint a "standby counsel" for a defendant who insists on representing himself, even over the defendant's objection, to aid the accused if he requests help, and to be available to represent him if termination of self-representation becomes necessary. *Faretta v. California,* 422 U.S. 806, 834 n.46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States v. Dujanovic,* 486 F.2d 182, 187 (9th Cir. 1973).

his Sixth Amendment rights. He bases his argument upon *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). There, the Court held that a defendant in a state criminal trial has a right to self-representation inferred from the Sixth Amendment. *Id.* at 821, 95 S.Ct. 2525.[4] The Court stressed that the individual autonomy of the defendant was the crucial factor in interpreting the Sixth Amendment and that the state may not "force a lawyer on a defendant" since the "right to defend is personal." *Id.* at 832–34, 95 S.Ct. at 2540. Kelley thus argues that if a defendant who is not a lawyer has the autonomy to choose to represent himself then he should have the autonomy to delegate his power of self-representation to a non-lawyer.

Kelley's argument misinterprets *Faretta.* The Court did not construe "counsel" as including the concept of self-representation. Rather, the Court noted that the Sixth Amendment rights "to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor" are granted to the accused personally. The Court concluded:

> Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment [independent of the assistance of counsel clause].

*Id.* at 819, 95 S.Ct. at 2533 (footnote omitted).

■■■ An independent right to the assistance of a non-lawyer cannot be mechanically inferred from the right to waive the assistance of a lawyer and to represent oneself, even though self-representation will usually result in advocacy by a non-lawyer. The validity of a knowing and intelligent waiver of the assistance of a lawyer is well established. *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942). But the power to waive a constitutional right does not necessarily carry with it the constitutional right to insist on its opposite. *Singer v. United States,* 380 U.S. 24, 34–35, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). The Court in *Faretta* did not mechanically infer the right to self-representation from the power to waive the assistance of counsel. It held that the right has an independent source in the structure and history of the Constitution. 422 U.S. at 819–20 & n.15, 95 S.Ct. 2525. No such independent source can be found for the alleged right to the assistance of a non-lawyer.

The personal autonomy protected by the right of self-representation does not require that a delegation of this right to a non-lawyer be respected. It is true that autonomy is to some extent vindicated by allowing a right to be exercised by a designated proxy. However, such an interpretation of autonomy is at odds with the whole tenor of the *Faretta* opinion and runs counter to the competing institutional interest in seeing that justice is administered fairly and efficiently with the assistance of competent lawyers. *See* 422 U.S. at 832–33, 95 S.Ct. 2525; *id.* at 839, 845, 95 S.Ct. 2525 (Burger, C. J., dissenting); *id.* at 851, 95 S.Ct. 2525 (Blackmun, J., dissenting); *see also Argersinger v. Hamlin,* 407 U.S. 25, 95 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

Nor does an historical survey of English statutes, colonial charters and early state constitutions which guaranteed self-representation support Kelley's claim. He points to several documents cited by the Court in *Faretta* which seemingly evidence a right to non-lawyer counsel. Kelley then attempts to argue that "counsel" in the Sixth Amendment refers to both lawyers and

---

4. In federal courts this right is codified in 28 U.S.C. § 1654:

    In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

non-lawyers. For example, the *Faretta* opinion observes that the colonists' traditional distrust of lawyers led some colonies, such as Massachusetts, to prohibit pleading for hire.[5] However, the Court later interpreted this provision as signifying the right to choose between representing oneself and "pleading through a lawyer." 422 U.S. at 828, 95 S.Ct. 2525.[6]

Indeed, there is no indication in *Faretta* that the Sixth Amendment right to counsel refers to assistance by any person other than a lawyer. *Cf. United States v. Stockheimer,* 385 F.Supp. 979, 983 (W.D. Wis.1974). We therefore hold that Kelley's Sixth Amendment rights were not violated by the district court's refusal to permit Hurd, a non-lawyer, to act as counsel. *United States v. Cooper,* 493 F.2d 473, 474 (5th Cir.), *cert. denied,* 419 U.S. 859, 95 S.Ct. 108, 42 L.Ed.2d 93 (1974) (pre-*Faretta*); *see United States v. Scott,* 521 F.2d 1188, 1191–92 (9th Cir. 1975); *cf. id.* at 1199 (Browning, J., dissenting).[7]

## II. Tax Liability

Kelley next argues that he did not incur federal income tax liability for the years 1972–74 and thus did not make false statements in the W–4E forms. He contends that he was paid in Federal Reserve notes that were not lawful money and that he therefore had no income upon which he could be taxed. We have rejected this argument as frivolous. *United States v. Gardiner,* 531 F.2d 953 (9th Cir. 1976); *United States v. Wangrud,* 533 F.2d 495 (9th Cir. 1976).

Kelley further contends that he had no tax liability for the year 1973 because of the failure of the IRS to conduct an administrative assessment of his tax after refusing to accept his incomplete return. *See United States v. Radue,* 486 F.2d 220, 222 (5th Cir. 1973), *cert. denied,* 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974).

The IRS is required to follow certain procedures in assessing the liability of a taxpayer before it can bring a *civil* suit to enforce a collection of the tax due. 26 U.S.C. §§ 6020(b), 6201 *et seq.;* 26 C.F.R. §§ 301.6020–1, 301.6201–1 *et seq.* (Supp. 1975). There is no requirement, however, that an administrative assessment record be filed before there can be a *criminal* prosecution for failing to report or pay income tax under 26 U.S.C. §§ 7201–07. Tax liability is imposed by statute independent of any administrative assessment. *United States v. Radue, supra,* 486 F.2d at 222; *Funkhouser v. United States,* 260 F.2d 86, 87 (4th Cir. 1958), *cert. denied,* 358 U.S. 940, 79 S.Ct. 346, 3 L.Ed.2d 348 (1959); 10 J. Mertens, Federal Income Taxation § 55A.05 (1970

---

**5.** Art. 26, Massachusetts Body of Liberties (1641), *cited in* 422 U.S. at 827 n.32, 95 S.Ct. 2525.

**6.** Kelley also refers to a similar provision in the Pennsylvania Frame of Government of 1682, *cited in* 422 U.S. at 828 n.37, 95 S.Ct. 2525. The Court's interpretation of this Pennsylvania document was similar to that of the Massachusetts provision. *Id.*

    *Faretta* also noted:

    The first lawyers were personal friends of the litigant, brought into court by him so that he might "take 'counsel' with them" before pleading. 1 F. Pollock & F. Maitland, History of English Law 211 (2d ed. 1909). Similarly, the first "attorneys" were personal agents, often lacking any professional training, who were appointed by those litigants who had secured royal permission to carry on their affairs through a representative, rather than personally. *Id.,* at 212–13.

*Id.* at 820 n.16, 95 S.Ct. at 2534. The period referred to, however, was approximately the thirteenth century. 1 F. Pollock & F. Maitland, The History of English Law 211–17 (2d ed. 1899). As the Court later mentioned, subsequent English acts granting the right to counsel referred to "counsel learned in the law." 422 U.S. at 824, 95 S.Ct. 2525; *see* Treason Act of 1695, 7 Will. 3, c. 3, § 1. Further, an 1836 act providing a right to professional counsel in felony cases generally, 6 & 7 Will. 4, c. 114, § 1, followed a half-century of common law development in this area. 422 U.S. at 825 & nn. 26–27, 95 S.Ct. 2525.

**7.** The question whether a district court has discretion to permit a defendant to have non-licensed lawyers act as counsel is not before us and we do not decide it. *See United States v. Stockheimer, supra,* 385 F.Supp. at 983, 985; *United States v. Scott, supra,* 521 F.2d at 1199 (Browning, J., dissenting).

rev. ed.); *see United States v. Commerford,* 64 F.2d 28, 30 (2d Cir.), *cert. denied,* 289 U.S. 759, 53 S.Ct. 792, 77 L.Ed. 1502 (1933). The testimony of an IRS agent that he computed Kelley's income tax liability for 1973 to be $1,003.77 was sufficient evidence that Kelley's statement of zero liability for 1973 was false.[8]

### III. Instruction on Willfulness

■ Kelley contends that the district court erred by refusing to instruct the jury that the government needed to prove Kelley acted willfully with a "bad purpose" or "evil motive," citing *United States v. Bishop,* 412 U.S. 346, 361, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973). This is not the first time it has been argued that *Bishop* requires an instruction that for a conviction, a defendant must have the "specific intent" to have engaged in tax evasion willfully. We have held that the phrases "bad purpose" and "evil motive" need not be included in jury instructions on specific intent. *United States v. Ducharme,* 505 F.2d 691 (9th Cir. 1974); *United States v. Hawk,* 497 F.2d 365, 367–69 (9th Cir.), *cert. denied,* 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974).

■ Neither is a lack of intent to defraud the government a defense to a violation of 26 U.S.C. § 7205 when a taxpayer intentionally makes a false statement on a W–4E form. *United States v. Smith,* 487 F.2d 329 (9th Cir. 1973), *cert. denied,* 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1974). Furthermore, there was ample evidence that Kelley intentionally made false statements. His employer questioned him upon the filing of. the first form in 1973, Kelley complained to his employer about the erroneous withholding of taxes in 1973 and his returns for 1971 and 1972 were filed in substantially correct form. Also, there was evidence that Kelley was claiming no tax liability as a means of expressing his discontent with the monetary system and his belief in the unconstitutionality of the Internal Revenue Code. The expression of political beliefs, however, is not a defense to supplying false information in violation of 26 U.S.C. § 7205. *United States v. Malinowski,* 472 F.2d 850, 855–58 (3d Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973) (protest against Vietnam conflict); *cf. United States v. Oaks,* 508 F.2d 1403 (9th Cir. 1974) (discriminatory prosecution is a defense).[9]

Any remaining issues do not merit discussion.

AFFIRMED.

---

**8.** Kelley also contends that the failure to reassess his tax liability for 1972, after he filed an amended return, left him with no liability. This argument is specious. The treatment of amended returns is within the broad discretion of the IRS. *Miskovsky v. United States,* 414 F.2d 954, 955 (3d Cir. 1969). This discretion of whether to reassess was not abused when Kelley filed an amended return of zero liability because he was not paid in "dollars."

**9.** Neither civil disobedience nor unreasonable and bad faith mistakes of law should constitute a defense to a prosecution. *See* Fletcher, *The Individualization of Excusing Conditions,* 47 S.Cal.L.Rev. 1269, 1295–99 (1974).