849 F.2d 610
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nicholas J. PHLIPOT, Defendant-Appellant.
 No. 87-3891.
 United States Court of Appeals, Sixth Circuit.
 June 16, 1988.
 
 Before ENGEL, Chief Circuit Judge, and KEITH and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Defendant-appellant Nicholas J. Phlipot appeals his jury conviction of three counts of willfully attempting to evade the payment of income taxes. 26 U.S.C. Sec. 7201. We affirm.
 
 
 2
 The government charged that Phlipot willfully failed to fully pay his taxes in the years 1980, 1981, and 1982. Despite the district court's innumerable suggestions that he obtain the assistance of counsel and despite the court's repeated attempts to make a legal adviser readily available to him, Phlipot insisted on proceeding pro se at trial. He continues to represent himself on appeal, raising the following claims: (1) that the district court violated his purported sixth amendment right to the non-professional counsel of his choice; (2) that his indictment was insufficient because it was signed by the Acting United States Attorney for the Southern District of Ohio prior to his taking an oath as the United States Attorney for the Southern District of Ohio; (3) that 26 U.S.C. Sec. 7201 is an unconstitutional delegation of Congress' "Power To lay and collect Taxes" under article I, section 8, clause 1 of the Constitution; (4) that the government failed to meet its burden of proof under Sec. 7201 because it failed to show a "corpus delicti " or injured person; and (5) that his conviction was based on insufficient evidence. We now address Phlipot's claims seriatim.
 
 I.
 
 3
 Phlipot was arraigned on May 1, 1987. At that time, the court asked Phlipot if he had an attorney. Phlipot responded that he did not. When asked if he intended to secure counsel, Phlipot said, "No, Sir." The court thereafter repeatedly and emphatically cautioned Phlipot about his right to counsel. The following excerpts from the trial transcript typify the court's thoroughness and patience, and Phlipot's tenor before the court.
 
 
 4
 Court: You are entitled to be represented by an attorney who is licensed by the Supreme Court of Ohio, who will represent you in this case. Do you understand that you have that right?
 
 
 5
 Phlipot: Yes.
 
 
 6
 Court: All right. Do you understand that this is a right given you under the law and under the Constitution of the United States; do you understand that?
 
 
 7
 Phlipot: Yes.
 
 
 8
 Court: Do you understand that the only way you can go to trial on a charge of this serious a nature is if you come here into court and tell me that you don't want such an attorney; do you understand?
 
 
 9
 Phlipot: Yes, sir.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 Court: All right. Now, do you want or are you going to obtain an attorney to represent you?
 
 
 13
 Phlipot: No, sir.
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 Court: The question is, are you declining to get an attorney--let me withdraw that. Do you feel that you could afford to pay an attorney if you choose to get one?
 
 
 17
 Phlipot: With my life at stake, I would not hire an attorney. That is my responsibility.
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 Court: You have the right to decline to accept an attorney if that's your wish. If you wish to go to trial against the government indictment without the services of an attorney--I personally think it's a foolish thing to do--that, of course, is your right. The law, however, requires me to appoint you a legal adviser, who will be available if at any time during the pretrial stage or the trial itself you wish to defer to that individual and to secure legal advice.
 
 
 21
 While you have the right to refuse the services of an attorney, you have no right to refuse the services of a legal adviser....
 
 
 22
 The court then continued Phlipot's arraignment until May 8, 1987.
 
 
 23
 At the May 8th continuation of Phlipot's arraignment, the court, exercising extreme patience and vigilance, again attempted to apprise Phlipot of the seriousness of his apparent choice to proceed without legal counsel. After entering pleas of not guilty on Phlipot's behalf (over his objections), the court set a trial date for July 6th and thereafter told Phlipot that it would furnish him with the name and telephone number of a legal adviser whom Phlipot could contact at any point for "any legal advice on the defense of this case." On June 25th, the court notified Phlipot that attorney Thomas Hanna would serve as his legal adviser.
 
 
 24
 A final pretrial conference was held in court on the morning of July 6th. The court continued its attempts to dissuade Phlipot from proceeding pro se. After reading aloud Phlipot's May 1 statement declining legal assistance, the court once again asked, "Is it still your position, sir, that even though you understand that under the law you have the right to an attorney, that you do not wish to have one?" Phlipot replied, "I am not refusing counsel of my choice but I do not wish to have an attorney." Apparently, Phlipot objected to the court's suggestion that he be represented by a "licensed" attorney.
 
 
 25
 The court once again attempted to impress upon Phlipot the seriousness of the Sec. 7201 charges and the fact that he could be fined and sentenced to as much as five years confinement on each of the three counts. Nonetheless, Phlipot insisted that he wished to represent himself. Phlipot did, however, object to the court's characterization of his choice to proceed pro se as a "waiver" of his right to counsel, apparently because he desired a representative who was not a member of the bar. After Phlipot repeatedly refused to heed the court's advice to seek legal counsel, the court recessed so that Phlipot could meet with Mr. Hanna, his court-appointed legal adviser.
 
 
 26
 Following a recess of one hour and fifteen minutes, the court reconvened, but only Hanna returned to the courtroom. The court again recessed until Phlipot's trial, scheduled for later that afternoon. Following the second recess, Hanna advised the court that Phlipot had refused his services during the court's first recess. Nonetheless, the court ordered Hanna (over Phlipot's objection) to remain at counsel table throughout the proceedings. After Phlipot again voiced his intention to refuse Hanna's services, the court concluded:
 
 
 27
 I would simply tell you that if at any time during this trial you do change your mind and you decide you wish an attorney, all you have to do is so advise me or your legal adviser, Mr. Hanna.
 
 
 28
 Phlipot proceeded pro se throughout the trial and was convicted on all three counts.
 
 
 29
 On appeal, Phlipot argues that the court violated his sixth amendment right to counsel by requiring him to choose a representative who is a member of the Ohio bar. According to Phlipot, "If specific members of the various 'Bar Associations' are the only persons who can appear before the Courts, then it must be acknowledged that the Judicial System is no longer a 'public instution [sic ]' but rather a 'private Association that has control over a public instution [sic ].' " Phlipot therefore concludes that he did not "waive" his right to counsel.
 
 
 30
 In a recent unpublished per curiam opinion, a panel of this court summarized the state of the law as it pertains to the issue of whether or not the term "counsel," as used in the sixth amendment, includes individuals not admitted to the practice of law.
 
 
 31
 This Circuit, in United States v. Whitesel, 543 F.2d 1177 (6th Cir.1976), cert. denied 431 U.S. 967, reh'g denied 434 U.S. 881 (1977), held that the Sixth Amendment does not prevent courts from determining the qualifications of those who practice law and that courts may limit such practice to members of the bar.[1] Thus, the district court did not violate [ ] [plaintiff's] Sixth Amendment rights by denying his request to have his friend "assist" him from the defense table. [ ] [Plaintiff's] argument on his historical interpretation of the meaning of "assistance of counsel" is quite ably refuted by District Judge Garza's discussion of the history of attorney qualification in Turner v. American Bar Ass'n, 407 F.Supp. 451, 474-79 (N.D.Tex., W.D.Pa., N.D.Ind., D.Minn., S.D.Ala., & W.D.Wis.1975), aff'd sub nom. Pilla v. American Bar Ass'n, 542 F.2d 56 (8th Cir.1976).
 
 
 32
 While we conclude that the defendant has no Sixth Amendment right to the assistance of non-lawyer friends, a court may allow such assistance as an exercise of its discretion. See Whitesel, 543 F.2d at 1180 n. 3 (citing United States v. Stockheimer, 385 F.Supp. 979 (W.D.Wis.1974), aff'd, 534 F.2d 331 (7th Cir.), cert. denied 429 U.S. 966 (1976)). Here, however, [ ] [plaintiff] does not contend, nor does this court conclude, that the district court abused its discretion.
 
 
 33
 United States v. Perry, No. 85-5311, slip op. at 1, 2 (6th Cir. Aug. 4, 1986) (per curiam).
 
 
 34
 Like the plaintiff in Perry, Phlipot has not challenged the district court's decision denying him the assistance of a non-attorney as an abuse of discretion, nor could he, given the seriousness of the charges and Phlipot's admitted lack of legal expertise. Instead, Phlipot's challenge is predicated solely upon the sixth amendment. Consequently, under the guidelines of Perry, his challenge must fail.
 
 II.
 
 35
 Following his conviction on July 10, 1987, Phlipot filed a Petition for Extraordinary Relief claiming that the indictment charging him with violating Sec. 7201 was false and fictitious. Phlipot claimed that the indictment had been signed by D. Michael Crites, the United States Attorney for the Southern District of Ohio, some forty days prior to his taking the oath of his office. Phlipot's motion was denied.
 
 
 36
 On October 1, 1986, Crites, then an Assistant United States Attorney, was nominated to be the United States Attorney for the Southern District of Ohio. On October 3rd, Chief Judge Rubin of the Southern District administered the oath to Crites enabling him to serve as Acting United States Attorney pending Senate confirmation of his appointment.[1] Crites signed Phlipot's indictment on April 10, 1987. Crites was not confirmed by the Senate until April 21, 1987, and was not administered the oath as United States Attorney until May 22, 1987. However, it is undisputed that Crites was duly sworn as the Acting United States Attorney at the time Phlipot's indictment was preferred. Phlipot's arguments to the contrary are meritless.
 
 III.
 
 37
 Phlipot contends that Sec. 7201 of Title 26 is an unconstitutional delegation of Congress' power to lay and collect taxes under article I, section 8, clause 1 of the Constitution. In his reply brief, Phlipot argues that a self-administered tax collection system is not "proper" under the necessary and proper clause (article 1, section 8, clause 18). This argument is completely devoid of merit. As the district court held:
 
 
 38
 The Supreme Court, however, has long recognized the power of Congress to create a system of income tax collection which requires taxpayers to file returns and to make payments of the taxes found due therein. See, e.g., United States v. Sullivan, 274 U.S. 259 (1927).
 
 
 39
 See also Wheeler v. United States, 744 F.2d 292 (2d Cir.1984); United States v. Acker, 415 F.2d 328, 330 (6th Cir.1969), cert. denied 396 U.S. 1003 (1970).
 
 IV.
 
 40
 Phlipot's claim that the government failed to prove a corpus delicti at trial is equally misplaced. Under Sec. 7201,
 
 
 41
 [a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this law or the payment thereof shall, in addition to other penalties, provided by law, be guilty of a felony....
 
 
 42
 26 U.S.C. Sec. 7201. Accordingly, the government need only have shown that Phlipot willfully attempted to evade paying taxes which were due. "[T]he necessary intent may be inferred from conduct 'the likely effect of which would be to mislead or to conceal.' " United States v. DeTar, 832 F.2d 1110, 1114 (9th Cir.1987) (quoting Spies v. United States, 317 U.S. 492, 499 (1943)). An inferential showing of willful intent coupled with a showing of nonpayment is enough to send the case to the jury. See, e.g., Spies, 317 U.S. at 499. The two elements of intent and nonpayment constitute the corpus delicti[2] of Sec. 7201, notwithstanding Phlipot's assertions to the contrary.
 
 V.
 
 43
 Phlipot also challenges the sufficiency of the evidence proffered by the government under Sec. 7201. As stated by the Supreme Court in Jackson v. Virginia, 443 U.S. 307 (1979):
 
 
 44
 [T]he relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 
 45
 Id. at 319 (emphasis in original).
 
 
 46
 As to the element of Phlipot's willful intent, the government proffered the following evidence:
 
 
 47
 --In 1975, Phlipot filed a W-4 form (dated August 8, 1975) claiming four exemptions. This form remained in effect until January 5, 1981.
 
 
 48
 --In 1979, Phlipot filed an unresponsive 1040 return (dated April 14, 1980) which failed to indicate the number of exemptions he claimed and which answered "OBJECT" to every salient inquiry.
 
 
 49
 --In 1981, Phlipot filed a W-4 form (dated January 5, 1981) on which he claimed he was "exempt" from withholding.
 
 
 50
 --In 1982, Phlipot filed another W-4 form (dated March 1, 1982) on which he also claimed to be "exempt" from withholding.
 
 
 51
 --In 1980, Phlipot filed an unresponsive 1040 return (dated April 13, 1981) which answered "OBJECT" to every salient inquiry.
 
 
 52
 --Phlipot failed to file returns in 1981 and 1982.
 
 
 53
 --Throughout the period between 1980 and 1982, Phlipot dealt in relatively large quantities of cash and gradually stopped using his bank account for the deposit of income items.
 
 
 54
 As to the element of Phlipot's non-payment, the government proffered the following evidence:
 
 
 55
 --In 1980, Phlipot had taxable income of over $37,000 but failed to pay a tax due and owing of over $9,000.
 
 
 56
 --In 1981, Phlipot had taxable income of over $33,000 but failed to pay a tax due and owing of over $9,000.
 
 
 57
 --In 1982, Phlipot had taxable income of over $29,000 but failed to pay a tax due and owing of over $7,000.
 
 
 58
 Clearly, any rational trier of fact could have inferred that Phlipot willfully attempted to evade paying taxes which were due and owing in 1980, 1981, and 1982. Jackson v. Virginia, 443 U.S. at 319.
 
 
 59
 If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes....
 
 
 60
 Spies, 317 U.S. at 499.
 
 VI.
 
 61
 For the reasons set forth above, we AFFIRM Phlipot's convictions.
 
 
 
 [1]
 Under Ohio Rev.Code Ann. Sec. 4705.01 (Anderson 1987),
 No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct, or defend any action or proceeding in which he is not a party concerned, either by using or subscribing his own name, or the name of another person, unless he has been admitted to the bar by order of the Supreme Court in compliance with its prescribed and published rules....
 
 
 [1]
 Section 544 of Title 28 provides that "each United States Attorney, Assistant United States Attorney, and Attorney appointed under Sec. 543 of this title, before taking office, shall take an oath to execute faithfully his duties."
 
 
 [2]
 Corpus delicti has been defined, "[i]n a derivative sense, [as] the substance or foundation of a crime; a substantial fact that a crime has been committed." Black's Law Dictionary 413 (4th Ed.1957)