544 So.2d 1281 (1989)
STATE of Louisiana
v.
Harrison RINEHART.
No. 88-KA-1571.
Court of Appeal of Louisiana, Fourth Circuit.
May 25, 1989.
*1282 Harrison Rinehart, New Orleans, in pro. per.
Harry F. Connick, Dist. Atty., Susan Kreston, Charles L. Collins, Asst. Dist. Atty., New Orleans, for appellee.
Before BYRNES, CIACCIO and BECKER, JJ.
BYRNES, Judge.
Harrison Rinehart appeals his conviction by a jury of issuing worthless checks in excess of $500.00 in violation of LSA-R.S. 14:71. We affirm.
On September 9, 1985 Rinehart purchased a mobile telephone unit and accessories for the unit from Electrocom Inc. He paid for the unit with a check in the amount of $1,500.00 and wrote a separate check in the amount of $71.13 for the accessories. Defendant's bank returned the two checks to Electrocom as defendant's account was overdrawn. Patrick Darby of Electrocom subsequently attempted to contact defendant but was unsuccessful. Darby then sent a certified letter to defendant, and the return receipt came back signed by defendant on October 7, 1985. Defendant admitted receiving the letter, but testified he did not open it because his office was burglarized and the letter stolen before he *1283 read it. Subsequently, Darby contacted Officer Grandolfo of the forgery division of the New Orleans Police Department. Officer Grandolfo tried to contact defendant but he, too, was unsuccessful.
On September 9, 1985 defendant's account was overdrawn by $1,589.56. The balance had been negative since September 1, 1985. Defendant deposited a check for $45,000.00 on August 26, 1985. The check was returned on August 30 because the account it was drawn on had been closed. Defendant was so informed on September 2 or 3, 1985. Defendant deposited, on September 11, a check for $9,300.00 drawn on his corporate account but that check was returned NSF. Numerous other deposits were made into the account but several of those checks were NSF. For the month of September 1985, defendant had a total of $164,057.62 in checks and other debits paid out of the account and there were deposits and other credits, including returned checks, in the amount of $164,509.40.
Defendant was convicted of issuing worthless checks in excess of $500.00 and sentenced to serve five (5) months in Parish Prison. He appeals urging twenty-eight (28) assignments of error. Each is discussed below; however, they are reranked in the interest of judicial economy.

ASSIGNMENT OF ERROR NO. 2
Defendant argues prescription ran on the charges against him prior to the commencement of trial as he was tried more than two years after the institution of prosecution. He states prosecution was instituted in either October or November of 1985 when Electrocom reported the NSF checks to the police and Officer Grandolfo commenced his investigation. Thus, he asserts that his trial on February 10, 1988, commenced after prescription ran.
Pursuant to La.C.Cr.P. art. 578, the trial of a non-capital felony must commence within two years of the date of institution of prosecution. Prosecution is instituted either by formal indictment, filing of a bill of information or by arrest and actual restraint. State v. Dewey, 408 So.2d 1255 (La.1982). The record reflects that defendant was arrested on March 19, 1986. Therefore, defendant's contention that prescription ran prior to trial is without merit as his trial commenced less than two years after the date of his arrest.

ASSIGNMENT OF ERROR NO. 1
Defendant also argues he was denied his right to a speedy trial in violation of the Sixth Amendment. This argument is also without merit. Four factors must be considered in determining whether a defendant has been deprived of his right to a speedy trial. They are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Sweeney, 443 So.2d 522 (La.1983). The first inquiry is into the length of the delay. If the delay is presumptively prejudicial, the remaining factors are to be inquired into. The length of the delay that provides such an inquiry is dependent upon the peculiar circumstances of the case. State v. Dewey, supra.
The length of the delay in this case was approximately twenty-three months from the time defendant was arrested on March 19, 1986. While this appears lengthy, the causes for the delay in bringing defendant to trial are numerous and justify the delay. The bill of information was filed April 3, 1986, and arraignment was set for April 15, 1986 at which time defendant failed to appear. He failed to appear at his bond forfeiture hearing on April 29, 1986, and an alias capias was issued. Defendant was not arraigned until January 16, 1987. At that time, defendant moved for preliminary examination and moved to suppress the evidence and confession. Hearing on the motions was set for February 6, 1987, but defendant failed to appear. He states that on the day before the hearing he attempted to continue it. The preliminary examination was reset for March 27, 1987 but was continued on motion of defendant until April 3, 1987. The hearing was held that day and trial was set for May 27, 1987.
*1284 Trial was continued due to another trial until June 17, 1987. Also, on May 27, 1987, defendant filed an application for writs with this court requesting a stay until the trial court ruled on a series of pro se motions. The writ application was denied on June 10, 1987. On June 17, 1987 the trial was again continued because defendant's appointed counsel was not present. Defendant himself was present and did not object to the continuance until July 27, 1987. There is nothing in the record which shows that anything took place on that date, but on August 20, 1987, Ronald Rakosky was appointed to assist defendant with defendant representing himself. Trial was then set on October 6, 1987. On that date, Rakosky was relieved of his appointment and trial was continued until November 20, 1987, due to another trial and because none of defendant's witnesses were present. Defendant did not object to the continuance.
The State moved for a continuance on November 24, 1987, and trial was continued to January 20, 1988. Defendant appeared for trial on that date, but since none of his witnesses were present, trial was again continued, without objection, until January 28, 1988. On January 28, the trial was once again continued and set for February 10, 1988. None of defendant's witnesses were present. Defendant filed a motion for speedy trial and a motion to reduce bond, but did not object to the continuance.
Trial took place on February 10, 1988. Defendant orally moved to dismiss the case under La.C.Cr.P. art. 578. He alternatively asked for a continuance since none of his witnesses were present. The trial court denied the continuance.
Considering all of the foregoing circumstances, there were justifiable reasons for the delay in commencing trial. A large part of the delay was due to defendant's insistence on representing himself and in the failure to have his witnesses properly subpoenaed. Little of the delay can be attributed to the State's actions.
Defendant did not assert his right to a speedy trial until shortly before trial actually commenced, and he acquiesced in every continuance. The prejudice to defendant was minimal since he was out on bond pending trial and did not lose crucial evidence or witnesses by the mere passage of time. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
Defendant further complains that he was not allowed to have counsel of his choice. He argues that he has a Sixth Amendment right to have a non-lawyer as his counsel of choice. In U.S. States v. Kelley, 539 F.2d 1199 (9th Cir.1976), cert. den., 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1976), the defendant claimed he had a constitutional right to be represented by a layperson based on Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In rejecting the defendant's argument, the Court stated:
Kelley's argument misinterprets Faretta. The Court did not construe "counsel" as including the concept of self-representation. Rather, the Court noted that the Sixth Amendment rights "to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor" are granted to the accused personally. The Court concluded:
Although not stated in the Amendment in so many words, the right to self-representationto make one's own defense personallyis thus necessarily implied by the structure of the Amendment [independent of the assistance of counsel clause].
Id. at 819, 95 S.Ct. at 2533 (footnote omitted).
[2,3] An independent right to the assistance of a non-lawyer cannot be mechanically inferred from the right to waive the assistance of a lawyer and to represent oneself, even though self-representation will usually result in advocacy by a non-lawyer. The validity of a knowing and intelligent waiver of the assistance of a lawyer is well established. Adams v. United States ex rel. McCann, *1285 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942). But the power to waive a constitutional right does not necessarily carry with it the constitutional right to insist on its opposite. Singer v. United States, 380 U.S. 24, 34-35, 85 S.Ct. 783 [789-90], 13 L.Ed.2d 630 (1965). The Court in Faretta did not mechanically infer the right to self representation from the power to waive the assistance of counsel. It held that the right has an independent source in the structure and history of the Constitution. 422 U.S. at 819-20 & n. 15, 95 S.Ct. 2525 [at 2533]. No such independent source can be found for the alleged right to the assistance of a non-lawyer.
The personal autonomy protected by the right of self-representation does not require that a delegation of this right to a non-lawyer be respected. It is true that autonomy is to some extent vindicated by allowing a right to be exercised by a designated proxy. However, such an interpretation of autonomy is at odds with the whole tenor of the Faretta opinion and runs counter to the competing institutional interest in seeing that justice is administered fairly and efficiently with the assistance of competent lawyers. See 422 U.S. at 832-33, 95 S.Ct. 2525 [at 2539-40]; id at 839, 845, 95 S.Ct. 2525 [at 2543, 2546] (Burger, C.J., dissenting); id. at 851, 95 S.Ct. 2525 [at 2549] (Blackmun, J., dissenting); see also Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
Id., 539 F.2d at 1202. See also U.S. v. Benson, 592 F.2d 257 (5th Cir.1979); State v. Taylor, 495 So.2d 996 (La.App. 3rd Cir. 1986), writ denied 499 So.2d 84 (La.1987). This assignment is without merit.

ASSIGNMENT OF ERROR NO. 12
Defendant contends the trial court erred in failing to determine whether he was capable of representing himself and that he did not knowingly and intelligently waive his right to counsel.
Absent a knowing and intelligent waiver of the right to counsel, no person may be imprisoned for an offense unless he is represented by counsel at trial. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); State v. Smith, 479 So.2d 1062 (La.App. 3rd Cir.1985). A criminal defendant has a constitutional right to self-representation; but, in order to represent himself, a defendant must knowingly and intelligently forgo the benefit of representation by counsel. Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). A defendant must be made aware of the dangers and disadvantages of self-representation. Id. In State v. Hegwood, 345 So.2d 1179 (La. 1977), the Court held that where a defendant asserts his right to self-representation, the trial court must determine that the waiver is intelligently and voluntarily made and that the assertion of the right to self-representation is clear and unequivocal. In State v. Bell, 381 So.2d 393 (La. 1980) the Court held that the record must show the trial court assessed the defendant's literacy, competency, understanding and volition before allowing the defendant to represent himself.
The record establishes that the trial court warned defendant about proceeding without an attorney and that the defendant is well-educated and fully understood the ramifications of his decision to waive his right to counsel. Such is reflected in his clear and articulate presentation before the court and in his numerous written motions. And it is further indicated by the fact that he discharged the attorney representing him on two occassions during this litigation. Thus, defendant did waive his right to be represented by an attorney.

ASSIGNMENTS OF ERROR NOS. 3, 9, 16 and 17
By these assignments of error, defendant argues he was denied compulsory process to obtain witnesses and documents for his defense. These assignments lack merit as the record reflects that service was attempted after defendant made his request for subpoenas.

*1286 ASSIGNMENTS OF ERROR NOS. 4, 10, 18 and 20
In these assignments, defendant claims he was denied access to the court to file pleadings, and was denied due process when the trial court would not hear his motions and when he did not receive prosecution motions. He further argues he was denied due process by the trial court's alleged ineptness at keeping records.
The record does not support these contentions. The record is replete with motions filed by defendant. It is clear that the trial court did consider the motions legally filed by the defendant. Defendant alleges he did not receive several prosecution motions; however, he does not establish how this prejudiced him. Therefore, any error is harmless. Finally, defendant's assertion that the trial court was inept at record keeping is without support.

ASSIGNMENTS OF ERROR NOS. 5 and 17
In these two assignments, defendant claims that there was fraud committed by officials of the trial court and misconduct committed by the prosecution. None of defendant's allegations of fraud or misconduct are supported by the record. These assignments, therefore, are without merit.

ASSIGNMENT OF ERROR NO. 8
Defendant asserts the trial court was divested of jurisdiction when he filed a motion to recuse the trial judge. No such motion appears in the record. Thus, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 11
Defendant claims he was unduly prejudiced by the introduction of his photograph at trial. A review of the trial transcript does not show that such a photograph was ever shown at trial. Moreover, even if his photograph had been shown, defendant fails to show that this in any way contributed to the jury's verdict against him. This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 13 and 14
In assignment of error no. 13, defendant states the arresting officer did not read him his rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In assignment of error no. 14, he complains the arresting officer did not inform him of the charges pending against him. There is no testimony in the record either by defendant or the arresting officer regarding these issues. Nothing in the record supports defendant's claims. Defendant has submitted an affidavit of Daniel Spalt who stated the police did not give defendant his Miranda warnings or advise him of the charges. The affidavit attached to defendant's brief cannot be considered since it was not made part of the trial court record. State v. Singletary, 461 So.2d 481 (La.App. 3rd Cir.1984).
Further, Miranda held that any inculpatory statements made by an arrestee cannot be used at trial unless the arrestee has been informed of his privilege against self-incrimination and his right to counsel and those rights have been intelligently waived. Since no inculpatory statement made by defendant was used at his trial, there was no violation of his rights. State v. Johnson, 255 La. 314, 230 So.2d 825 (1970) aff'd sub. nom. Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972). These assignments are without merit.

ASSIGNMENTS OF ERROR NOS. 15 and 19
In these assignments, defendant complains he was not afforded the opportunity to review the arrest warrant and was not provided a transcript of the preliminary examination. The record contains no motions or requests for these documents. Accordingly, these assignments are meritless.

ASSIGNMENTS OF ERROR NOS. 21 and 22
In assignment of error no. 21, defendant claims that he had to be tried by a judge qualified under Article III of the United States Constitution. In assignment of error no. 22, defendant claims the prosecutor *1287 had to be employed by and represent the executive, not the judicial, branch of the government. These two assignments are so frivolous they do not merit discussion. Defendant is not entitled to a dismissal of these grounds.

ASSIGNMENTS OF ERROR NOS. 23 and 24
In these two assignments, defendant complains he was denied equal protection by being held to the same standards as a lawyer. This assignment is without merit. A defendant who elects to represent himself is entitled to no special indulgence by the court. He must comply with the relevant rules of procedural and substantive law and cannot complain, on appeal, that the quality of his own defense was lacking.

ASSIGNMENT OF ERROR NO. 25
Defendant further claims he was denied due process of law when the State amended the bill of information after trial. The bill of information originally stated defendant issued a worthless check but was amended to state defendant issued two worthless checks.
Defendant makes no allegation the amendment prejudiced his defense of the charges against him, or that the amendment was one of substance. Accordingly, this assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 26 and 27
In these two assignments, defendant takes exception with the pre-sentence investigation. He asserts that a complete investigation was not undertaken and that the pre-sentence investigation report contained erroneous information. Defendant merely complains about the opinions expressed by the investigator. Accordingly, these assignments lack merit.

ASSIGNMENT OF ERROR NO. 28
In his final assignment of error, defendant asserts that the court reporters failed to provide him with the transcripts of all "oral proceedings", specifically referring to nine court appearances. Defendant was informed by the court reporters nothing was transcribed on the days of those appearances. He fails to state what is contained in the allegedly missing transcripts or how his right to have his case reviewed has been prejudiced. This assignment is meritless.
For the foregoing reasons defendant's conviction and sentence are affirmed.
AFFIRMED