700 So.2d 1068 (1997)
STATE of Louisiana, Plaintiff-Appellee,
v.
Zandra H. WASHINGTON, Defendant-Appellant.
No. 29784-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1997.
Rehearing Denied October 23, 1997.
*1071 George Britton, III, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, John P. Spires, Assistant District Attorney, for Plaintiff-Appellee.
Before MARVIN, C.J., and BROWN and PEATROSS, JJ.
MARVIN, Chief Judge.
Appealing her conviction in a judge-trial for issuing a worthless check and her sentence to six years at hard labor, Zandra Washington questions the sufficiency of the evidence to convict and contends that the sentence is unconstitutionally excessive.
We affirm the conviction, vacate the sentence and remand for resentencing.

FACTS
Shopping for a new car for her college-age son, Washington made several trips to Twin City Pontiac/Jeep in Monroe. On Saturday, April 1, 1995, she bought a new Eagle Talon auto, writing a check to Twin City for $5,000 and financing the remainder of the purchase price.
According to Washington, the dealership was reluctant to accept her personal check for the down payment because it was not able to verify the availability of the funds through the bank on a Saturday. However, she claimed the salesman and sales manager decided to accept the check when her son, who was with her, said he would get a car elsewhere if he could not get the car from Twin City that day.
Washington testified that she informed the salesman she did not have the money on deposit to cover the check when she issued it but she was expecting to receive the money in the next week from settlement of her mother's estate. She said the salesman told her she would have 30 days to cover the check. Neither she nor the state subpoenaed the salesman to testify.
Twin City's office manager, Harris, testified the check was deposited on April 5, 1995, and was returned to the dealer on April 11, marked NSF. Harris explained that after Washington failed to honor verbal demands to make the check good, a registered letter demanding payment, which conformed to the statutory requirements of La. R.S. 14:71 A(2), was mailed to Washington on May 5 and received by her on May 8, 1995. Washington did not respond. Twin City's owner, Alva Wilkinson, then contacted Washington, demanding that she either pay the check or return the car.
Washington was formally charged with the crime by bill of information on June 14, 1995, and she was later arrested. She did not attempt to satisfy the check or return the car to the dealer. After ignoring repeated demands for several months to pay off the check or return the car, Washington caused the car to be surrendered in Natchitoches with 19,000 miles on the odometer some time in September 1995. This occurred some six months after she wrote the $5,000 check on April 1, 1995, according to Jim Paine, the Twin City sales manager. Paine also testified that Washington did not pay any monthly installment that was due under the financing contract.
*1072 Washington admitted at trial that she knew she did not have sufficient funds in her account to satisfy the $5,000 check when she wrote it and that she had lied when she said on the day before her trial began that she had $4,800 to apply on the check. She explained at trial that the monetary "settlement" she received from her mother's estate was not sufficient, as she had thought it would be, to satisfy the check.
The trial court found Washington guilty of issuing worthless checks in an amount greater than $500. She was exposed to either or both a maximum sentence of up to 10 years, with or without hard labor and a fine of up to $3000. La. R.S. 14:71 C.
After a presentence investigation was conducted, the trial court advised the defendant, at the time of sentencing, that if she was prepared to make restitution to the victim, he was prepared to change the sentence. When Washington advised the court on the record that she had money to make restitution, the court directed her to do so, while denying her counsel's request that she be sentenced under La. C.Cr.C.P. art. 893. We have no representation or argument that she made restitution in any amount.

ISSUING WORTHLESS CHECKS
In two assignments, Washington challenges the sufficiency of the evidence to convict. Her third assignment of error concerning the state's proof of defendant's knowledge is not briefed and therefore deemed abandoned.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. The facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
Although La. R.S. 15:438 provides that when circumstantial evidence is used to convict, every reasonable hypothesis of innocence must be excluded, this statutory rule is not a separate test from the Jackson standard and does not establish a stricter standard of review. Rather, all the evidence, both direct and circumstantial, must be sufficient under the Jackson standard to satisfy a rational trier of fact that the defendant is guilty beyond a reasonable doubt. A review of a possible hypothesis of innocence urged by a defendant determines whether that hypothesis is objectively reasonable. See State v. Porretto, 468 So.2d 1142 (La.1985); State v. McKnight, 539 So.2d 952 (La.App. 2d Cir. 1989), writ denied.
To convict defendant for issuance of worthless checks in excess of $500, the state is required to prove beyond a reasonable doubt that: (1) defendant issued, in exchange for anything of value, whether the exchange is contemporaneous or not; (2) a check, draft or order for the payment of money upon any bank or other depository; (3) knowing at the time of the issuing that the account on which drawn has insufficient funds, and the defendant has insufficient credit with the financial institution on which the check is drawn to have the instrument paid in full on presentment; and (4) the instrument was issued with intent to defraud. La. R.S. 14:71.[1]
*1073 Washington argues the state did not prove every essential element of the offense of issuing worthless checks because it did not prove beyond a reasonable doubt that she possessed intent to defraud when she issued the check to Twin City. Though intent is a question of fact to be decided by the trier of fact, it need not be proved as a fact, but may be inferred from the circumstances. State v. Kahey, 436 So.2d 475 (La.1983).
La. R.S. 14:71 A(2) creates a statutory rebuttable and permissible presumption of the issuer's intent to defraud when the offender fails to pay the amount of the worthless check within 10 days of the receipt of notification by certified mail of nonpayment of the check, sent to the address shown on the check or the address shown in the records of the bank on which the check was drawn. The statute, found to be constitutional in State v. Lindsey, 491 So.2d 371 (La.1986), establishes a permissive presumption allowing, but not requiring, the trier of fact to find that the defendant possessed the intent to defraud based upon proof of the notification of nonpayment by certified mail and failure to pay within 10 days.
The office manager of Twin City testified to the mailing of a demand letter to the defendant at the address on the check and to another address which the defendant had given to the car salesman, and to receipt of the return receipt or "green card" from the post office bearing the signature of the defendant as the recipient. The state introduced a copy of the letter, the certified mail receipt and the return receipt signed by Washington indicating that, on May 8, 1995, the defendant received the notice that the check had been returned unpaid. Washington admitted she had not paid the check. The trial court therefore could, but was not required to, accord the state the presumption that Washington had the intent to defraud Twin City.
Washington argues the state's proof of her intent to defraud was insufficient because she said she informed persons at the dealership that she had not received the funds she expected to receive from settlement of her mother's estate and the salesman told her she would have 30 days to cover the check. She reasons that this shows that when she issued the check she did not intend to defraud the car dealership.
Twin City's sales manager, Jim Paine, testified that Washington did not tell him she did not have the money when he accepted the check and that it was not the dealership's practice to agree to hold a check for down payment on a new car purchase from someone who promised to make the check good later. The office manager testified that the dealership some years ago might accept a check for a small amount and hold it for a couple of days when the issuer said he would get paid in a couple of days, but not on car purchases and not in recent years. The salesman with whom defendant initially dealt was not called to testify either by the state or by the defendant.
Alva Wilkinson, owner of the dealership, testified he communicated with Washington for 2½ months after the sale, asking her to pay the check or return the car, and that she responded, saying she was going to pay the check, but she had not done so up through the trial date. Washington did not reveal to the dealership where the car was located for several months. About five or six months after she acquired the car, she told Wilkinson that the car was in Natchitoches, where he arranged for the car to be stored for Twin City's retrieval.
*1074 The trial court considered the above circumstances, noting that the defendant received the 10-day letter and, for a long time, made no effort to either make good on the check, bring the funds to the dealer, or return the car to the dealership, even when she received the monetary "settlement" from her mother's estate which was less than she expected. Finding that Washington did not advise the sales manager the money was not in the account when she issued the check; that Washington refused to honor the check within the 10-day period after demand, warranting application of the statutory presumption of intent; that she failed to return the car for several months after demand and after she allegedly received the expected settlement; that she refused to cooperate with Twin City in its attempts to recover the car; and the fact that the car had 19,000 miles on it when recovered, the trial court deemed Washington's intent to defraud Twin City Pontiac proved beyond a reasonable doubt.
Washington, of course, knew she had not paid for the car and had failed to timely return it to the rightful owner. Such conduct falls within the accepted meaning of the term defraud. State v. Lester, 502 So.2d 251 (La.App. 3d Cir.1987). The statutory presumption of intent to defraud arising from proof of defendant's failure to pay after receipt of the 10-day letter and the testimony of the sales manager and the owner of Twin City supports the trial court's conclusion that the state proved beyond a reasonable doubt that defendant intended to defraud Twin City.

EXCESSIVE SENTENCE
Asserting her sentence of six years at hard labor is excessive because this is her first felony conviction, Washington argues she was prepared to make restitution on the day of the sentencing but wanted to exercise her appeal rights, and the offense was not part of a consistent course of conduct. She argues that incarceration was not warranted under her personal circumstances.
We are mindful that the trial court has complete discretion to impose any sentence which is not excessive from a constitutional perspective, as long as it is within the statutory sentencing range for the particular offense involved and the court considers the statutory sentencing guidelines and articulates for the record the factors taken into account and the factual basis for the imposition of that sentence. State v. Smith, 639 So.2d 237, 240 (La.1994). When the guidelines have been adequately considered and the factors taken into account have been adequately articulated for the record, a reviewing court considers only the question of constitutional excessiveness of the sentence. State v. Douglas, 28518 (La.App.2d Cir.8/21/96), 679 So.2d 469, 471.
The trial court concluded that three of the statutory factors suggesting a sentence of imprisonment  undue risk of the commission of another crime during probation, need of correctional treatment best provided by commitment to an institution, and deprecation of seriousness of the offense by a lesser sentence  were present in this case. La.C.Cr.P. art. 894.1 A. Defendant's criminal history involving several arrests, and one prior conviction for issuing worthless checks were also mentioned, the court noting that defendant apparently had been allowed to avoid prosecution in a number of instances by paying the amounts of the checks. The court also noted the repeated unsuccessful attempts by the victim and the district attorney's office to have the defendant pay the check or return the automobile, which she failed to do for several months after issuance of the check.
Because the trial court articulated the sentencing guidelines, our inquiry, as mentioned, is relegated to whether the sentence is unconstitutionally excessive. State v. Smith, supra.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. State v. Douglas, supra, p. 471. A sentence is constitutionally excessive if it is grossly out of proportion to the severity of the offense, or simply is needless or purposeless. State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La. 1980); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ denied. A sentence *1075 is considered grossly disproportionate to the offense if, when the crime and punishment are considered in light of the harm done to society, it shocks one's sense of justice. State v. Hogan, 480 So.2d 288 (La. 1985); State v. Douglas, supra, p. 471; State v. Strange, 28,466 (La.App.2d Cir. 6/26/96), 677 So.2d 587.
The record must reflect that the court considered the defendant's personal history, prior criminal record, seriousness of the offense and the likelihood of defendant's rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981). This defendant is a 43-year-old mother of six children, with no significant criminal background. Her husband of more than 20 years, Henry Washington, is disabled. His disability income of $860 monthly is the only income for the family. The record shows nine arrests for issuing worthless checks, only one of which is a conviction, not a felony, but a misdemeanor conviction in 1987. In the other IWC charges, some worthless checks were apparently paid by the defendant while other charges were not prosecuted. No charges are shown between 1987 and 1995.
The last charge of issuing worthless checks against defendant was in 1987, almost eight years before the instant offense. This is a substantial lapse in time between the current offense and the prior alleged criminal activity, not expressly mentioned by the trial court. These circumstances do not allow the conclusion that Washington engaged in a course or pattern of criminal conduct on this occasion, but rather in a single offense related to obtaining a car for her son. This negates the likelihood of a repeat offense.
The trial court reasoned that a severe sentence should be imposed because Washington did not voluntarily make restitution and thus mitigate her conduct, despite having repeated opportunities. We have no showing on this record, however, of the actual monetary loss of the dealership. While the economic impact of the offense was substantial if based on the $5,000 check, the loss was somewhat mitigated by the dealership's recovery of the car, which had some value. When attempting to recover the car, the dealership offered to consider a lease of the car to Washington. Although the car obviously depreciated in value, being driven 19,000 miles in the five months Washington's son had it, the loss to the victim is not necessarily the full amount of the check.
The trial court insisted that Washington make full restitution of the check even though the property had been returned and the actual loss to the victim is not shown or estimated. Despite the court's insistence on full restitution prior to sentencing, the sentence is not conditional, in default of restitution.
The defendant has a relatively innocuous personal history and one misdemeanor conviction. Considering the uncertainty of the exact economic impact of the offense on the victim, the eight years between the present offense and the most recent "bad check" charge, and the individual circumstances of this first-felony offender, we find the 6-year hard labor sentence unconstitutionally excessive. Washington's conduct does not rise to the level of the near-worst IWC offenses.
The 6-year sentence is one of the most severe among reported cases for convictions involving issuing worthless checks, even those involving multiple offenses. See e.g.:

State v. Deville, 376 So.2d 1237 (La. 1979) (reversal of 5-year sentence for 50-year-old defendant with one prior conviction for IWC for check written two days before the check involved in offense which was subject of appeal);

State v. Tuttle, 26307 (La.App.2d Cir. 9/21/94), 643 So.2d 304 (affirmance of 2-year sentence for defendant who pleaded guilty to first degree robbery and IWC, used money to support his drug habit);

State v. Taylor, 621 So.2d 64 (La.App. 2d Cir.1993) (defendant with 15 prior convictions for IWC convicted of three separate counts of IWC and sentenced to three years each on two counts and five years on the third);

State v. Rinehart, 544 So.2d 1281 (La. App. 4th Cir.1989) (5-month sentence for IWC involving two checks totaling almost $1600);

*1076 State v. Phelps, 520 So.2d 1299 (La.App. 5th Cir.1988), writ denied (fourth felony offender with extensive criminal history and continuing drug abuse problem, who stole a check and issued it in exchange for a truck, received maximum sentence of 10 years);

State v. Brantley, 514 So.2d 747 (La. App. 2d Cir.1987) (affirmance of 6-year sentence for defendant convicted of IWC, who had been arrested 16 times on IWC or similar charges, had long continuous history containing no significant breaks in this type of activity, failed to complete term of probation in prior conviction, and had history of mental problems); and

State v. Barnes, 489 So.2d 402 (La.App. 5th Cir.1986), affirmed 494 So.2d 1174 (La. 1986) (6-month sentence for fourth felony offender convicted of IWC totaling $1500).
In comparison with the criminal history, personal background and facts of the offenses in the above-reported cases, we find the trial court's sentence of Washington to six years at hard labor disproportionate to the severity of the offense, her criminal record and her personal background. This defendant is not the worst or near-worst of reported IWC offenders. The sentence makes no measurable contribution to acceptable penal goals under the individual circumstances of this case. State v. Campbell, 404 So.2d 1205 (La.1981). We vacate the sentence and remand to the trial court for resentencing.

DECREE
The conviction is affirmed. The sentence is vacated and the matter is remanded to the trial court for resentencing.
BROWN, J., concurs in affirming the conviction; dissents to vacating the sentence. Reasons assigned.
BROWN, Judge, concurring in part, dissenting from reversal of the sentence.
Although concerned about the application of La. R.S. 14:71 A(1)(c) and the lack of evidence of any transfer documents, I concur in the conviction.
All defendant had to do was return the car; nevertheless, she kept it for over six months and drove it for over 19,000 miles. Even so, she still could have paid the lease costs for that time and concluded this matter. She chose instead to hassle the court. Under these circumstances the sentence is not grossly disproportionate to the crime nor shocking to one's sense of justice. Thus, I disagree with vacating the sentence and would affirm.
APPLICATION FOR REHEARING
Before MARVIN, C.J., and NORRIS, BROWN, GASKINS and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] In brief, defendant argues that the state must also prove that the check was not issued in payment of an installment contract or open account. This is no longer an element of the offense. La. R.S. 14:71 was amended in 1990 to delete the exclusion of such installment or open account payments from the parameters of the offense of issuing worthless checks, and provides in Para. A(1)(b) that the section applies to "a check ... tendered for satisfaction ... of payments due on installment contracts, open accounts...." Even so, we do not consider this down payment on the purchase of a new car to be a payment on an installment contract. That would only be relevant to a contract for payment of the financed portion of the purchase price of this car. We also note that La. R.S. 14:71 was also amended in 1988 to include Para. A(1)(c) providing that the IWC statute applies to "a check ... given for a motor vehicle ... conditioned upon delivery of documents necessary for transfer of a valid title...." The record does not reflect the status of any of the transfer documents relative to the car in question, except a reference in the testimony to the buyer's order form and the drive out tags on the car. However, Washington acknowledged in her testimony that she signed a release after the car was returned to the custody of the dealership.